In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4015

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

GREGORY A. GLOSSER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 CR 20042—**Michael P. McCuskey**, *Chief Judge.*

ARGUED NOVEMBER 5, 2009—DECIDED SEPTEMBER 29, 2010

Before BAUER, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.*    The government appeals from a 121-month sentence a defendant received for attempting to possess more than 500 grams of methamphetamine, arguing that the district court committed procedural error by announcing and promising that it would impose the mandatory minimum sentence during the change of plea hearing, before it knew the advisory guidelines range or had heard either party's argument

regarding the sentence. Although we recognize that the court's references to the ten-year mandatory minimum stemmed from a desire to ensure the defendant understood the minimum time he faced (he had previously been incorrectly informed that he faced a statutory minimum of five years), we agree with the government that the premature announcement of sentence constitutes procedural error that requires we vacate the sentence and remand for further proceedings.

## I. BACKGROUND

After being arrested while possessing methamphetamine, John Sims agreed to cooperate with law enforcement authorities and identified Gregory Glosser as a person selling methamphetamine in the Charleston, Illinois area. Sims wore a wire during a meeting with Glosser, and Glosser expressed his desire for methamphetamine to resell. Glosser also said that if Sims could not obtain the drugs, Glosser would go to Oklahoma to get the methamphetamine on his own. About a week later, law enforcement agents arranged for Sims to meet with Glosser. Sims told Glosser he had a pound-and-a-half of methamphetamine in the packages he had with him, and Glosser responded that they would make about $57,000 when they resold it. After Sims gave the packages to Glosser, law enforcement agents placed Glosser under arrest. He was read his *Miranda* warnings and admitted that he intended to resell the methamphetamine in gram quantities.

Glosser was charged with a single count of attempting to possess 500 or more grams of a substance con-

taining methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). He entered a plea of not guilty. The morning that trial was to begin, however, Glosser's attorney told the court that he had decided to plead guilty. The court then engaged in a lengthy discussion with Glosser to ensure he was pleading guilty knowingly and voluntarily. At one point, the court asked the prosecutor whether Glosser had any felony convictions, and the prosecutor responded that he was not aware of any. Defense counsel also agreed, but when the court asked Glosser, Glosser volunteered that he pled guilty to a felony count of obstruction of justice in 1987. When the court asked whether that meant he had a state court felony for which he had received probation, Glosser answered that was not correct and said his sentence had been sixty days in jail.

Reading from the government's original filing with the court, the judge told Glosser that by pleading guilty, he would receive a mandatory minimum sentence of five years in prison with a maximum term of forty years. The prosecutor interjected and stated that he had explained to defense counsel that morning that under the applicable statute, the mandatory minimum was actually ten years' imprisonment, with a maximum of life imprisonment. Glosser responded that he was not aware of the ten-year mandatory minimum and stated he had been told when he was arraigned before a different judge that he faced five to forty years' imprisonment. The prosecutor stated that Glosser would not receive a forty-year sentence, and the court clarified that the mandatory minimum sentence was ten years.

Glosser responded that he understood, but then said that he had been under the impression during the ten months since his arraignment that he faced five to forty years in custody. The court explained that the applicable minimum sentence was ten years unless he cooperated and the government made a motion for a downward departure, and the court also made clear that the government had not promised to make such a motion. The court further stated, "The only promise or prediction that I can make to you at this moment is there is nothing that would cause me, from what I've seen in this case and have heard of your background, nothing that would cause me to sentence you any more than what Congress mandates I must do, a minimum of ten."

After again clarifying that the government had made no promise that it would move for a downward departure, the court stated, "Well, I've given you the biggest promise I can give you. It's not a life case. It's not a 40-year case. It's a 10-year case. So that's as good as I can give you, but I can't give you one day less than ten years." Glosser reiterated his position that the way the indictment was written was contradictory to what he was being told, and the court again explained that the charge carried a ten-year mandatory minimum. As the court went through the elements of the charge and asked Glosser if he had any questions, Glosser responded that he did have a question—the way he read the statute, he said, possessing 100 to 999 grams of a mixture containing methamphetamine for a person with no prior drug convictions carried a five to forty-year sentence. The court once again explained that the charge against Glosser

carried a ten-year minimum. Glosser replied that he understood and stated that he still wished to plead guilty.

The court then discussed the consequences of giving up the right to a jury trial, and the government established a factual basis for the plea. The following exchange then occurred:

Court:   With no force, threats, or promises other than the Court saying to you that if you plead guilty and I accept it, the minimum sentence would be ten years, and that would be the sentence that I would impose, are you pleading guilty under all of those factors because you did, in fact, do what the government's charged you with, and you are guilty of the matter in the indictment?

Glosser: Yes, your Honor.

AUSA:    Your Honor, if I may, I just want to be clear because I had heard you when you stated initially that your best guess would be that you would impose that minimum sentence based on the facts you have before you now.

         I just want to make it clear we haven't taken a position as to what sentence—

Court:   I fully intend that the government will stand up here and ask for more than ten years, but I haven't heard anything in this case—and I've heard more about

this case probably than any case I've ever had with all of the hours we spent in court, all of the facts presented, all of the filings. So I can't imagine that there's anything in this case that would surprise me, and that he even admitted a felony . . . that you didn't tell me about.

This is a case, as far as I'm concerned from what I've seen, that Congress has got it at the maximum—at ten years to me is a stiff sentence, and the mandatory minimum ten years—I can't imagine that I've promised him anything that I wouldn't do. I fully expect you'll ask for more, and I fully expect that I'll find a reason not to give it to you.

AUSA: Okay. I just want to make it clear that the Court isn't foreclosing the government from presenting any evidence as we go forward to sentencing.

Court: Oh, no.

AUSA: Thank you.

Court: But, I mean, I haven't seen a prior record that would justify more than ten. I haven't seen anything about this that would require more than ten. And so I'm making that promise to [defense counsel] and Mr. Glosser because I intend to carry it out and articulate many

reasons why ten is, if anything, more than sufficient, more than reasonable, maybe even excessive; but that's what Congress says. Ten is it, and that is my promise.

But you can present and make your record . . . . You will have that ample opportunity to present all of those facts to this Court so that if Mr. Glosser ultimately appeals his sentence, the Seventh Circuit Court of Appeals can say, "You're right. Judge McCuskey made a mistake. Mr. Glosser's wrong. The government's right. He gets a greater sentence than ten years." That opportunity will be made. You'll have a chance to make your record, and Mr. Glosser will have an opportunity to throw open the door to that cross-appeal on whatever record you make at sentencing. But I've made it clear where I'm at. Mr. Glosser, do you have any questions where I'm at?

Glosser: No, your Honor. You've made it very clear.

Court: Are you asking me to accept this plea, to enter a judgment of conviction on the matter contained in the indictment with the only promise made that if I accept it I'll sentence you to ten years?

Glosser:  Yes, Your Honor. That's what I under-
          stand.

. . . .

Court:    Any hesitation?

Glosser:  Ten years is a long time.

Court:    Ten years is a long time. That's what my
          promise is. It's a long time. . . .

The court concluded that Glosser was pleading guilty because he was, in fact, guilty to the matter charged in the indictment. The court also determined that Glosser entered the plea knowingly and stated Glosser "understands that the Court has promised him a mandatory sentence of ten years at sentencing" and that Glosser was pleading guilty under those facts and circumstances.

The probation office prepared a Presentence Investigation Report ("PSR") before the sentencing hearing. It placed Glosser in criminal history category I, the lowest category, and it recommended an advisory guidelines range of 188 to 235 months' imprisonment. Also prior to the sentencing hearing, the government filed a motion asking the court to clarify that Glosser acknowledged that his guilty plea was not induced by any promise of a specific sentence and understood that the court could sentence him within the statutory range of ten years to life in prison.

The court referenced the government's motion at the sentencing and reviewed the change of plea hearing in

detail. The court stated that the reason it had discussed the mandatory minimum sentence at the plea hearing was so that Glosser would not be confused as to the term that he faced. After hearing the parties' arguments, over the government's objection, and against the PSR's recommendation, the court gave Glosser a two-level reduction for acceptance of responsibility. In doing so, it pointed to Glosser's plea of guilty, its belief that his acceptance of responsibility was genuine, and his correction of the record regarding his prior felony conviction. That reduction lowered the guidelines range to 151 to 188 months. Next, the court acknowledged that under U.S.S.G. § 5H1.11, military, civic, and employment-related contributions generally were not relevant in determining whether a departure was warranted. Pointing out that it did not think it had ever sentenced a defendant in a drug case with as good a work history as Glosser's, as well as Glosser's four years of active duty service as a Marine with an honorable discharge and the fact that two of his ex-wives and a former attorney had written letters on his behalf, the court stated it found these considerations warranted a two-level reduction in this case. The resulting advisory guidelines range was 121 to 151 months' imprisonment. The government, on the other hand, requested a 210-month sentence, a sentence it argued was appropriate in part because of firearms found at Glosser's residence.

The court imposed a sentence of 121 months' imprisonment and ruled that the sentence was sufficient but not greater than necessary to punish Glosser. It stated that although it had previously told Glosser the sentence

would be for 120 months, it was adding an extra thirty days' imprisonment in light of the hassle he had given the court, which was partly a reference to frivolous filings Glosser had made. The government appeals from the sentence Glosser received.

## II. ANALYSIS

The government maintains that the district court erred by announcing that it would sentence Glosser to the mandatory minimum of ten years in prison before it knew the advisory sentencing guidelines range or had heard the parties' positions regarding Glosser's sentence. In doing so, the government contends that the district court committed a procedural error that requires resentencing. We review the procedures followed by the district court in sentencing de novo. *United States v. Gibbs*, 578 F.3d 694, 695 (7th Cir. 2009).

Even though the United States Sentencing Guidelines are advisory, the Supreme Court has said that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to ensure nationwide consistency, the Guidelines should be the starting point and the initial benchmark," and the court is to "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 49, 50 n.6 (2007). Consistent with the Supreme Court's direction, we have repeatedly said that in determining a defendant's sentence, the procedure a judge is to follow begins with first correctly calculating the advisory guidelines range. *United States*

*v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008). Next, after hearing the parties' arguments, the judge is to consider the factors spelled out in 18 U.S.C. § 3553(a) to decide whether the defendant's sentence should fall within that guidelines range or elsewhere. *Id.* When reviewing a sentence, the Supreme Court has directed that we "must first ensure that the district court committed no significant procedural error." *Gall*, 552 U.S. at 51.

The district court's references to a ten-year mandatory minimum sentence during the change of plea hearing were undoubtedly motivated in large part by a desire to ensure that Glosser understood he was facing more than the five- to forty-year sentence he initially thought he faced. It was no doubt frustrating to have a de-fendant repeatedly raise the incorrect statutory range, even after it had been clarified numerous times, and the district court's desire and efforts to ensure that Glosser clearly understood the applicable statutory minimum sentence are commendable. And we commend the court on the very thorough discussion it had with Glosser to ensure that he understood the ramifications of a guilty plea before he entered it. Nonetheless, we agree with the government that a procedural error took place here. *Cf. United States v. Vrdolyak*, 593 F.3d 676, 683-84 (7th Cir. 2010) (remanding for resentencing where circum-stances suggested that district court had committed to a noncustodial sentence for the defendant). When the district court made its repeated assurances at the change of plea hearing that it would impose a ten-year sentence, it did so without knowing the advisory guidelines range, as evidenced by its explicit statement during

the hearing that it did not know the range. The court also had not yet heard the parties' positions on sentencing. Nor had it received the probation office's PSR. And it is clear that the court went beyond simply explaining the consequences of a guilty plea, as it repeatedly "promised" Glosser a sentence of ten years.

The next question is whether we must order a new sentencing hearing in this case in light of the procedural error. Glosser emphasizes that the government does not maintain that his sentence is unreasonable. Therefore, he argues, his sentence should be upheld. It is true that the guidelines are only advisory, and that the district court gave a thorough explanation for why it chose the sentence it did. But even if the sentence were independently reasonable, an issue on which we take no position, we cannot let it stand if the procedural error was egregious. *See United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009) ("It is important to emphasize that . . . our harmless error determination and review of the sentence's reasonableness are separate steps.").

Indeed, both parties have argued that if there was an error, harmless error review applies. The Supreme Court has stated that an error is harmless when the error "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992); *Abbas*, 560 F.3d at 667. When we are convinced the sentence would have been the same absent the error, we deem the error harmless. *Abbas*, 560 F.3d at 667. We have found some procedural errors in sentencing harmless where the district court made it clear

that it would have imposed the same sentence even if the error had not been made. *See id.* (finding error in imposing U.S.S.G. § 2C1.1 enhancement harmless where sentencing judge explicitly stated it would have imposed same sentence even if § 2C1.1 did not apply); *United States v. Anderson*, 517 F.3d 953, 965-66 (7th Cir. 2008) (deeming error in calculating net benefit harmless where court stated at sentencing it would impose same sentence even if its benefit calculation was incorrect); *United States v. Jackson*, 549 F.3d 1115, 1118 (7th Cir. 2008) (finding error in offense classification harmless where sentencing judge explained that it would have imposed the same sentence regardless of whether offense was a "crime of violence"); *United States v. White*, 519 F.3d 342, 349 (7th Cir. 2008) (upholding sentence imposed before Supreme Court clarified that judges could consider the Guidelines' crack/powder cocaine disparity where sentencing judge made clear it would have imposed the same sentence regardless of any guidelines). On the other hand, when we are not certain that the sentencing judge would have imposed the same sentence had it not committed a procedural error, we have declined to find the error harmless. *See, e.g., United States v. Zahursky*, 580 F.3d 515, 528 (7th Cir. 2009) (remanding for resentencing where district court's statements did "not approach the firm assurances that we had in the cases where we have found a sentencing error harmless"); *United States v. Edwards*, 581 F.3d 604, 613 (7th Cir. 2009) (remanding for a further sentencing hearing where it was unclear whether a procedural error had occurred that affected the choice of sentence);

*see also Gibbs*, 578 F.3d at 695-96 (remanding for resentencing where district court committed procedural error by failing to calculate advisory guideline range for supervised release term).

Although both parties argue that harmless error review applies, the harmless error construct does not fit our case as easily as it did in *Abbas*, *Anderson*, and other cases where the error was in a guidelines calculation. That is, one might be inclined to say that the district judge's actions suggest it would have imposed the same sentence even if it had not explicitly stated it would do so at the earlier hearing, and that the error was therefore harmless and the sentence should stand. We conclude otherwise. Although the district court gave several reasons at the sentencing hearing for imposing a below-guidelines sentence of 121 months, we are not confident that it would have done so if it had not decided it would impose the mandatory minimum sentence when Glosser changed his plea to guilty. The court made repeated statements at the change of plea hearing that it was promising a mandatory minimum sentence. It also said then that it expected the government to argue for a higher sentence, but, notably, that it would find a reason to impose a sentence of ten years. And at the sentencing hearing, although it gave independent reasons for imposing the sentence it did, the judge explained that the sentence of 121 months differed from what it had decided at the previous hearing only because it was imposing an additional thirty days for all that Glosser had put the court through. These comments do not assure us that the reasons articulated at the sen-

tencing hearing were truly independent, and not motivated by the earlier decision and promise.

Moreover, allowing this sentence to stand as harmless based on the district court's comments would lead to an odd result, as a prematurely determined sentence should not be insulated from review by a judge's later announcement that it would have imposed the same sentence. So whether viewed under harmless error review or as a fundamental procedural error, *see Puckett v. United States*, 129 S. Ct. 1423, 1432 (2009) (discussing "structural" errors, including those that "defy analysis by 'harmless-error' standards" by affecting entire adjudicatory framework); *Gibbs*, 578 F.3d at 695-96 (remanding in light of procedural error at sentencing without resort to harmless error analysis), the result is the same. While we acknowledge the quandary the district court faced by Glosser's repeated expressions that he wanted to plead guilty yet incorrectly thought the applicable mandatory minimum was a five-year sentence, we vacate Glosser's sentence and remand for a new sentencing hearing.

We also note that although neither party challenges Glosser's guilty plea at this juncture, we have some concerns about its validity. Glosser decided to plead guilty the morning he was to begin trial and did not sign a written plea agreement. At the hearing, he expressed repeated concerns about the sentence and only pled guilty after being promised he would receive a sentence of ten years' imprisonment. To avoid any question about the plea's validity, we suggest that the new

district court judge on remand conduct a new plea hearing to ensure that Glosser knowingly and voluntarily desires to plead guilty, with the knowledge that he will receive a sentence of at least ten years' imprisonment and that he could receive as much as life imprisonment.

## III. CONCLUSION

Glosser's sentence is VACATED, and this case is REMANDED for further proceedings consistent with this opinion. Circuit Rule 36 shall apply on remand.