NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 30, 2013
Decided March 22, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-3470

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff–Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 11 CR 364-1 |
| JORGE BACA-BACA, *Defendant–Appellant.* | Charles R. Norgle, *Judge* |

**O R D E R**

Jorge Baca-Baca challenges his 57-month prison sentence for being in the United States without permission after removal. *See* 8 U.S.C. § 1326(a). He contends that the district court mistakenly thought that it could not disagree, as a matter of discretion under 28 U.S.C. § 3553(a), with the 16-level upward adjustment under U.S.S.G. § 2L1.2(b)(1)(A)(ii) and thus refused to impose a sentence below the guidelines range. We agree and remand for resentencing.

Baca-Baca, a Mexican citizen, was a child when he entered the United States with his mother. According to his lawyer, his mother eventually became a naturalized United States citizen but never sought "legal status" for her son. Baca-Baca eventually became involved in gang activity. At age 17 he was arrested for possessing a handgun and ammunition, and at age 18 he was arrested again after he and two others beat up a 13-year-old. The victim suffered internal bleeding, a head injury, and a broken jaw. These arrests resulted in 1996 convictions for unlawful use of a weapon and aggravated battery, for which Baca-Baca received concurrent, three-year prison terms. He was paroled in June 1997 and removed from the United States the following month, but within two years he had returned to the United States illegally. In late 2000 he was arrested again after police acting on a tip found a quantity of marijuana, a scoped rifle, and fraudulent identification documents in his apartment. That arrest resulted in a 2001 conviction for possession of cannabis and another three-year sentence. He was paroled in August 2001 and removed to Mexico again days later, but he was back before October 2002 when he obtained an Illinois driver's license using an alias. Baca-Baca's lawyer would not let him discuss his gang affiliation with the probation officer, but in a document combining counsel's objections to the presentence report with her sentencing memorandum, she asserted that Baca-Baca had "settled down entirely" after his 2001 conviction, "disassociated from the gang," married, had children, and pursued work as a carpenter and tattoo artist.

In 2011 Baca-Baca gave two tattoos to a 13-year-old girl who presented him with identification showing her age as 21. The defendant recognized the ID to be fake and accepted a gift card as payment but, according to defense counsel, Baca-Baca "never would have guessed" that the girl "was only *thirteen*." The girl's parents called police, which led to a misdemeanor charge of applying a tattoo to a minor and the discovery that Baca-Baca previously had been deported. Baca-Baca later pleaded guilty to violating § 1326(a).

The probation officer calculated a total offense level of 21: a base offense level of 8, U.S.S.G. § 2L1.2(a), plus 16 levels because Baca-Baca had previously been removed after conviction for a felony crime of violence, *id.* § 2L1.2(b)(1)(A)(ii), minus 3 levels for acceptance of responsibility, *id.* § 3E1.1. With a criminal history category of IV, Baca-Baca's guidelines imprisonment range was 57 to 71 months.

In her combined sentencing memorandum and objections to the presentence report, defense counsel argued, for several reasons, that Baca-Baca should be sentenced below the guidelines range to 24 months. One reason, counsel insisted, is that the 16-level upward adjustment is not only empirically flawed but also "disproportionate to any actual danger" posed by Baca-Baca because he purportedly threw only one punch. Citing a district court opinion and a law review article, counsel asserted that the Sentencing Commission had

abandoned its " 'institutional role' in setting standards" and that the adjustment "may have been based on the suggestion of one commissioner."

Baca-Baca repeated his argument about the 16-level increase at the sentencing hearing. In response the prosecutor cited *United States v. Aguilar-Huerta*, 576 F.3d 365 (7th Cir. 2009), in telling the district judge incorrectly that the "Seventh Circuit has addressed that many times," and has said that judges "should not delve into the history of the 16-level enhancement." The district court responded to the government: "Well, I think your understanding of the law is correct. And the Court is compelled to follow the law. It is so ordered." Defense counsel later tried to clarify the government's reference to *Aguilar-Huerta*, emphasizing the actual holding that district courts are not *obligated* to, but *may*, consider the history of the guidelines and may sentence below the range based on a policy disagreement with a particular provision, *see id.*, 576 F.3d at 367–68. The court did not respond but instead gave permission to the prosecutor to "interrupt for one second" to discuss an unrelated typo in the presentence report. The court did not return to the subject of *Aguilar-Huerta*.

The district court adopted the probation officer's guidelines calculations and sentenced Baca-Baca at the low end of the range to 57 months. After acknowledging that the sentencing guidelines "are not mandatory" and instead "serve as guides to the Court," the judge commented on different arguments in mitigation asserted by Baca-Baca, though not the defendant's contention about the 16-level upward adjustment.

> The court concluded by noting the defendant's proposal for a 24-month prison term:
> If this was a first reentry after deportation, I would be more inclined, given
> the totality of the circumstances here, to accept [defense counsel's] position
> that 24 months might be an appropriate sentence. But on a second occurrence,
> and with the background of the defendant, I feel the Guideline range is fair
> and reasonable.

On appeal Baca-Baca argues that the district court committed procedural error: Because the court agreed with the prosecutor's statement that courts "should not delve into the history of the 16-level enhancement," Baca-Baca maintains, the court mistakenly considered itself to be precluded from evaluating his argument that the impact of the adjustment should be mitigated by reducing his prison sentence. Baca-Baca conceded at argument that the 16-level adjustment was correctly applied to his guidelines calculation, recognizing that district courts must accurately calculate the guidelines range and consider that range before imposing a sentence, *see Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011); *Gall v. United States*, 552 U.S. 38, 49, 51 (2007); *United States v. Ortega-Galvan*, 682 F.3d 558, 561–62 (7th Cir. 2012). His position at sentencing, he insisted, was that the district court should exercise its discretion to impose a below-guidelines sentence in light of the

considerations in 18 U.S.C. § 3553(a). He asks for a full remand for resentencing. We review de novo an argument that the district court treated the guidelines as mandatory. *United States v. Rollins*, 544 F.3d 820, 839 (7th Cir. 2008).

The government acknowledges that it misrepresented the holding of *Aguilar-Huerta* at sentencing but maintains that there was no procedural error because Baca-Baca's counsel corrected the misstatement. Alternatively, the government argues, any error was harmless because the district court clearly stated that it considered the guidelines to be advisory and that it had the power to impose a lower sentence.

Although no one (not even Baca-Baca) contends that the district court was unaware that the guidelines are now advisory, the record suggests that the court improperly cabined its discretion by stating that it could not consider Baca-Baca's specific argument for rejecting the 16-level adjustment and that it was "compelled to follow the law." District courts are free to reject *any* guideline for policy reasons, so long as the court provides reasonable justification for the sentence imposed. *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc). Not every argument needs to be entertained—as we have explained repeatedly, Baca-Baca's argument attacking the empirical soundness of U.S.S.G. § 2L1.2(b)(1)(A)(ii) is one that the district court *could* have simply disregarded if it saw no reason to second-guess the Sentencing Commission's recommendation. *See United States v. Garthus*, 652 F.3d 715, 721 (7th Cir. 2011); *United States v. Moreno-Padilla*, 602 F.3d 802, 813–14 (7th Cir. 2010); *Aguilar-Huerta*, 576 F.3d at 367–68. But rather than plainly stating its rejection of Baca-Baca's argument, the district court appears to have "felt that there was an outside constraint on [its] discretion that [it] was not free to set aside," despite its generic statement about the advisory nature of the guidelines. *See United States v. Schmitt*, 495 F.3d 860, 864–65 (7th Cir. 2007).

The government argues that remand is unnecessary because any error was harmless. But to find an error harmless, this court must be "convinced the sentence would have been the same absent the error." *United States v. Glosser*, 623 F.3d 413, 419 (7th Cir. 2010). The district court, as the government points out, explained its decision not to issue a below-guidelines sentence by referring to Baca-Baca's history of violent crime and repeated unlawful entry into the United States, after considering mitigating factors under § 3553(a). But this discussion bears on the reasonableness of the sentence overall, and proving that a sentence would be the same absent a procedural error "is not the same thing as proving that the sentence was reasonable." *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009). We require "firm assurances" that a district court's error did not affect its choice of sentence, *United States v. Zahursky*, 580 F.3d 515, 528 (7th Cir. 2009), and even though the district court here could have imposed a within-guidelines sentence, that does not answer the critical

question whether it would impose a different sentence, knowing that it could ameliorate the impact of the 16-level adjustment by going below the advisory range.

The judgment of the district court is therefore **VACATED** and the case is **REMANDED** for resentencing.