In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3766

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

WALTER D. HILL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cr-30116-MJR-1—**Michael J. Reagan**, *Judge.*

ARGUED MAY 2, 2011—DECIDED JULY 5, 2011

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Walter Hill, in his capacity as deputy liquor commissioner for East St. Louis, Illinois, exerted his position and authority to demand bribes, property, and, in at least one instance, sexual favors from liquor license holders. He pleaded guilty to attempting to commit extortion under color of official right in violation of 18 U.S.C. § 1951 and making false statements to the Federal Bureau of Investigation and

the Internal Revenue Service in violation of 18 U.S.C. § 1001(a)(2). The district court sentenced Hill to sixty months' imprisonment. In sentencing Hill, the district court determined that he was subject to a four-level upward adjustment under U.S.S.G. § 2C1.1(b)(3) for conduct by a public official in a high-level decision-making or sensitive position. The district judge assigned Hill a total offense level of 22 and with no criminal history points, that placed him in a guideline range of 41 to 51 months' imprisonment. The court, however, found that aggravating facts required a sentence above the guideline range and stated that even without a guide-line range, it would have entered the same sixty-month sentence based upon its review of the relevant 18 U.S.C. § 3553(a) factors.

Hill appeals his sentence, arguing that the district court erred in applying the four-level enhancement because he is neither a high-level decision-maker nor an occupant of a sensitive position. He further argues that his role as deputy liquor commissioner and assistant to the mayor is not sufficiently similar to the enumerated examples cited in U.S.S.G. § 2C1.1 cmt. n.4(B) to permit application of the sentencing enhancement. Finding no error in the district court's application of the enhance-ment or imposed sentence, we affirm.

## I.

Hill was a campaign organizer and political fundraiser for Alvin Parks while Parks was a candidate for the office of mayor of East St. Louis. Hill had also been Parks'

fraternity brother in college. After Parks won the election in April 2007, he created a new position of deputy liquor commissioner and appointed Hill to that position, even though Hill had no experience in city administration or liquor licensing. Hill also served as the mayor's assistant; he appeared on the mayor's behalf at functions that the mayor was unable to attend and conducted fundraising on the mayor's behalf for certain charitable events.

Illinois law details the authority, duties, and limitations of the local liquor control commissioner (the mayor or his designee). *See* 235 Ill. Comp. Stat. 5/4-2. The mayor "may appoint a person . . . to assist him in the exercise of the powers and the performance of the duties" as local liquor commissioner. *Id.* The commissioner has the power to grant, suspend, or revoke licenses, enter or authorize any law enforcement officer to enter a licensed premises to determine whether the provisions of the Act have been violated, receive local license fees, and levy fines. *Id.* at 5/4-4. He may also examine a license applicant under oath, examine the applicant's books and records, and issue subpoenas. *Id.* at 5/4-5.

The commissioner may revoke or suspend a license "if he determines that the licensee has violated any of the provisions of this Act or any valid ordinance . . . ." *Id.* 5/7-5. "In addition to the suspension, the local liquor control commissioner . . . may levy a fine on the licensee for such violations." *Id.* The commissioner must hold a public hearing before revoking or suspending a license or assessing a fine, unless he has reason to believe that

any continued operation of a particular licensed premises will immediately threaten the welfare of the community. *Id.* The commissioner's decision to levy a fine, refuse to grant a license, or revoke or suspend a license is subject to appeal to the Illinois Liquor Control Commission and subsequent judicial review. *Id.* 5/7-9 and 5/7-11. While the appeal is pending, the licensee can resume operation of the business. *Id.* 5/7-9.

The mayor granted Hill, as deputy liquor commissioner, the authority to accept and review applications for liquor licenses and to conduct background checks on applicants. Hill also had the authority to conduct on-site inspections of businesses that held liquor licenses and issue citations for liquor code violations based upon his interpretation of the code. Although the mayor had ultimate authority for the issuance and renewal of licenses, Hill oversaw and had substantial influence over the process. He told special agent Joe Murphy of the FBI that he handled the liquor licensing for the city because "the [m]ayor does not really know what he is doing in reference to liquor licenses." He indicated that the mayor was reliant on him to perform all licensing functions. The mayor provided no meaningful supervision over Hill in the execution of his duties.

Hill pleaded guilty to misusing the authority of his office to solicit and obtain money and property and request sexual favors from liquor license holders. He extorted money from Omar Shehadeh, who operated a liquor and convenience store. Hill knew that Shehadeh, an immigrant, was illegally in the United States, and

he threatened to close down Shehadeh's business for code violations unless he paid Hill $5,000. Shehadeh contacted federal authorities, who, with the use of audio and video devices, recorded Hill's extortion attempts. After the extortion funds were paid in full, Hill, by withholding a liquor license, attempted to convince Shehadeh to purchase an overpriced building in East St. Louis, open a new store, and give Hill a cut of his profits. Shehadeh eventually obtained his liquor license by paying Hill $2,080, which was $1,380 above the $700 license renewal cost. Hill kept the additional cash and renewed the license under a third party's name because of Shehadeh's immigration status.

There was also evidence that Hill requested money from other liquor license holders and obtained money from at least one licensee after threatening to cite code violations. Hill also falsely informed other business owners that the renewal cost of their licenses had increased by $200. He further abused his position by demanding free drinks from local liquor establishments and taking bottles of alcohol from behind the bar. At one adult entertainment establishment, Club 64, Hill acted in much the same way by throwing around his position as deputy liquor commissioner and asking for money, free liquor (sometimes taking full bottles), and lap dances. Club 64 is operated by Frank Marsala and his daughter Jody, who both felt compelled to accede to Hill's demands because of his position and authority over their liquor license. Jody testified that Hill locked her in his office and tried to obtain sexual favors from her while engaging in lewd behavior (he had his hands

down his pants) in exchange for renewal of her license. Because she rebuffed his advances, Hill didn't issue her the license that day. Jody's father had to go back a few days later to obtain the license renewal. (The district court credited Jody's testimony.) The Marsalas didn't complain about Hill's behavior for fear of losing their liquor license and ability to earn a living.

## II.

When reviewing a sentence, regardless of whether the sentence is inside or outside the Guidelines range, we must "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Although the Guidelines are advisory, the Supreme Court has stressed that district courts must treat them as "the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. The sentencing judge must, therefore, "first correctly calculate the advisory guideline range and then, based on the sentencing factors set out in 18 U.S.C. § 3553(a), decide whether to impose a sentence within that range." *United States v. Nelson*, 491 F.3d 344, 347 (7th Cir. 2007). Once we are convinced that the sentencing judge followed correct procedure, we then consider the substantive reasonable-

ness of the sentence. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). The sentencing court must not presume that a within-Guidelines sentence is reasonable, but must apply the factors set forth in 18 U.S.C. § 3553(a) in determining a reasonable sentence that is "sufficient, but not greater than necessary . . . ." *United States v. Johnson*, 635 F.3d 983, 988 (7th Cir. 2011) (quoting 18 U.S.C. § 3553(a)).

Errors in calculating the advisory guideline range are subject to harmless error analysis. *Abbas*, 560 F.3d at 667. Harmless error review "removes the pointless step of returning to the district court when we are convinced that the sentence the judge imposes will be identical to the one we remanded." *Id.* It is critical on review to first understand what the correct Guidelines sentence should be even if we are certain that the sentence imposed in the district court would have been the same absent the error. *Id.* "The correct sentence provides the launching point for our review under [the] substantive reasonableness prong." *Id.* Accordingly, we initially address the district court's calculation of the Guidelines and application of the U.S.S.G. § 2C1.1 enhancement.

**A.**

After considering sentencing testimony, the district court applied a four-level upward adjustment to Hill's sentence under U.S.S.G. § 2C1.1(b)(3). Pursuant to that Guideline section, a defendant convicted of "soliciting, or receiving a bribe" is subject to a four-level increase "[i]f the offense involved . . . any public official in a high-

level decision-making or sensitive position . . . ." U.S.S.G. § 2C1.1(b)(3). The commentary defines "[h]igh-level decision-making or sensitive position" as "a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." *Id.* at cmt. n.4(A). The commentary provides examples of public officials in high-level decision-making positions: "a prosecuting attorney, a judge, an agency administrator, and any other public official with a similar level of authority." *Id.* at cmt. n.4(B). The commentary similarly provides examples of public officials who hold sensitive positions: "a juror, a law enforcement officer, an election official, and any other similarly situated individual." *Id.*

The district court found that Hill qualified for the adjustment. The court acknowledged that Hill didn't establish liquor law policy or liquor commissioner policy, nor did he supervise other employees, but found that he qualified for the enhancement because he exercised substantial influence over the decision-making process. The sentencing judge found, based on testimony at the hearing, that "Hill was the [m]ayor's eyes and ears on liquor in the East St. Louis area," and the "[m]ayor basically deferred to him . . . so everything went through . . . Hill." The judge also found that Hill "had the authority to recommend to the [m]ayor, who apparently listened to him, as to who should and should not get a license in the first instance or have one renewed after that." The court explained that Hill "was the primary individual responsible for . . . overseeing

the process of renewing liquor licenses[, and] exercised an inordinate amount of discretion over the licensing of liquor establishments and the renewal of those licenses."

The district court determined that Hill's position regulating liquor licensing was a sensitive position comparable to law enforcement function. The court found that Hill had authority to enforce the liquor laws of East St. Louis and the state of Illinois. He wore a badge and had the authority to direct license holders to make changes within their establishments to comply with the liquor code. He also had the authority to cite businesses with violation reports, which triggered a disciplinary procedure that could result in sanctions. The court found Hill's authority significant given that liquor licensing directly pertains to the licensees' ability to earn a living.

Hill objects to application of the sentencing enhancement on several grounds. First, he contends that the district court erred in finding that he had actual authority over the granting or renewal of licenses, and maintains that his responsibilities as appointed official were clerical at most. Second, Hill argues that the district court's legal conclusions that Hill was a high-level decision-maker and occupant of a sensitive position are erroneous. Finally, Hill argues that his position must be similar in kind to those enumerated in comment note 4 and because his office (and the authority it provided) was not similar to the enumerated examples, it was excluded by the Sentencing Commission. He contends that just as application of the Armed Career Crimi-

nal Act is limited to those offenses involving a certain degree of purposeful violence, the Commission's examples in comment note 4 included only those officials with the ability to deny another a significant right or adversely impact such a right. We take each argument in turn.

Hill argues that the district court erred in finding that he had actual authority over the issuance and renewal of licenses. We review a district court's factual findings at sentencing for clear error. *United States v. Berry*, 583 F.3d 1032, 1034 (7th Cir. 2009); *see also United States v. Diekemper*, 604 F.3d 345, 353 (7th Cir. 2010). Factual findings are clearly erroneous only if we are firmly convinced after we review all of the evidence that a mistake has been made. *United States v. Wilson*, 437 F.3d 616, 621 (7th Cir. 2006).

The district court acknowledged that it was Hill's actual, and not apparent, authority that was relevant for purposes of the enhancement. The district court found that Hill actually had substantial influence over the licensing process. This finding wasn't clearly erroneous; there was more than sufficient testimony on which the district court could have based its determination. The record shows that Hill and the mayor were friends (going back to their college fraternity days) and Hill assisted the mayor, at times standing in his place at events. Once in office, the mayor extended his friend a benefit by creating a position of deputy liquor commissioner and appointing Hill to that position, even though Hill had no background to support his placement in

that position. As deputy liquor commissioner and the mayor's assistant, Hill had de facto authority and power to deny renewal of licenses, inspect and review license holders' businesses and records, and issue citations for liquor code violations. The district court credited Hill's statement to agent Murphy that he handled the liquor licensing for the city because "the [m]ayor does not really know what he is doing in reference to liquor licenses." Even if the mayor had the ultimate authority over the licensing process and signed the liquor licenses, the evidence revealed that he didn't provide meaningful supervision over Hill in the execution of his duties. As a result, Hill was able to blatantly flaunt and misuse his power for personal benefit. The court's conclusion that Hill "exercised an inordinate amount of discretion over the licensing of liquor establishments and the renewal of those licenses" wasn't erroneous.

We next address Hill's argument that the sentencing court erred in applying the U.S.S.G. § 2C1.1(b)(3) offense-level enhancement to these factual findings. We review judicial application of the Guidelines to factual findings under the de novo standard. *United States v. Taylor*, 637 F.3d 812, 817 (7th Cir. 2011). When interpreting the Guidelines, we "begin with the text of the provision and the plain meaning of the words in the text." *United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005) (quotation omitted). "In addition to the actual language of the Guidelines, we must also consider the Guidelines' Application Notes, as they are viewed as part of the Guidelines themselves, and not mere commentary on them." *Id.* (quotations omitted); *see also Stinson v. United States*,

508 U.S. 36, 38 (1993) ("[C]ommentary in the Guide-lines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal state, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

The commentary defines "[h]igh-level decision-making or sensitive position" as "a position characterized by . . . a substantial influence over the decision-making pro-cess." U.S.S.G. § 2C1.1(b)(3) cmt. n.4(A). Because we find that the district court properly determined that Hill held a sensitive position, we don't have to reach the question of whether he was also a high-level decision-maker. In *United States v. Reneslacis,* 349 F.3d 412, 415 (7th Cir. 2003), we considered whether an Immigration and Naturalization Service district-adjudications officer qualified as either a high-level decision-maker or held a sensitive position. *Id.* We initially observed that the district-adjudications officer didn't supervise any em-ployees, make public policy, stand in the shoes of a policymaker, or influence policymakers. *Id.* at 415-16. The officer occupied the first level of intake for applicants seeking to change their immigration status. *Id.* at 416. He made decisions largely by checking applicants' qualifica-tions against predetermined criteria. *Id.* We noted, how-ever, that the enhancement not only refers to "high-level" officials but also to officials who hold "sensitive" positions. *Id.* Although the officer didn't have a "particularly lofty position within the INS, he did hold a sensitive post." *Id.* We reasoned that "[b]ecause only a handful of his deci-sions were ever reviewed, he had near total control over who could become a permanent resident and eventually

a U.S. citizen." *Id.* We further noted that the officer could subpoena witnesses, take testimony, and perform other quasi-judicial functions. *Id.* Based on such facts, we found that the district court had properly applied the enhancement. *Id.*

The district court's findings in this case similarly support its conclusion that Hill was in a sensitive position given his relationship with the mayor and authority as deputy liquor commissioner. Courts have found the enhancement appropriate based on the official's ability to use his position to influence another in the exercise of his discretion. *See, e.g., United States v. ReBrook*, 58 F.3d 961, 970 (4th Cir. 1995) (finding that part-time attorney for state's lottery commission held sensitive position based on his relationship to director of lottery commission, the advice he gave him, the influence he had with other lottery commission members, and the fact that he was privy to confidential information), *abrogated on other grounds by Neder v. United States*, 527 U.S. 1 (1999); *United States v. Tomblin*, 46 F.3d 1369, 1391 (5th Cir. 1995) ("A senator's top administrative aide holds a position of substantial influence, because he often serves as the senator's functional equivalent."). The district court properly found that Hill was subject to the enhancement based on his position and substantial influence over the decision-making process.

And if that wasn't enough, the district court's finding that Hill was in a similar position to a law enforcement officer was well supported by the record. Prior to November 2004, the commentary to § 2C1.1 used "*supervi-*

*sory* law enforcement officers" as an example of public officials who held sensitive positions. U.S.S.G. § 2C1.1 cmt. n.1 (2003) ("'Official holding a high-level decision-making or sensitive position' includes, for example, prosecuting attorneys, judges, agency administrators, supervisory law enforcement officers, and other governmental officials with similar levels of responsibility.") (emphasis added) (This was the commentary in effect at the time *Reneslacis* was decided.) The Commission amended the Guidelines and commentary in 2004 by lowering the enhancement from eight to four levels, dropping the word "supervisory" from its reference to law enforcement officers, and adding the current definition of sensitive position. *See* U.S.S.G. § 2C1.1(b)(3) & cmt. n.4. These changes signify an intent to encompass more public officials within the ambit of the enhancement.

Hill may not have held a supervisory position, but he had authority to oversee the licensing process and enforce the liquor code. He made his authority known to licensees by prominently wearing his badge and flaunting his title. In accordance with the statutory authority delegated by the mayor, Hill could issue subpoenas, conduct on-site inspections of businesses to determine their compliance with local ordinances, and issue citations for violations. Hill also had de facto authority over the denial, suspension, and revocation of licenses. Although his actions were subject to review on appeal, this didn't negate Hill's sensitive position, just as review of an arrest by a police officer by way of a probable cause hearing or trial doesn't negate an officer's sensitive position. Hill's actions impacted

sensitive rights of license holders and his decisions were binding if not appealed. Thus, Hill's authority, granted to him by the mayor, was similarly aligned with that of a police officer whose decisions are subject to review. Liquor license holders, such as the Marsalas, were legitimately reluctant to confront Hill for fear of losing their liquor license. Accordingly, we conclude that Hill was in a sensitive position within the meaning of the guideline.

Hill makes the argument that the four-level enhancement cannot apply because the nature of his office is not similar in kinds to those examples enumerated by the Sentencing Commission. We have already concluded that the district court didn't error in determining that Hill held a position similarly situated to that of a law enforcement officer—one of the enumerated examples. *See* U.S.S.G. § 2C1.1 cmt. n.4(B). Hill, however, cites to *Begay v. United States*, 553 U.S. 137, 142 (2008) in support of his argument that the Commission's inclusion of enumerated examples serves to limit the scope of the enhancement to include only those officials whose function may have an impact upon significant rights, such as the right to a fair trial, the right to vote, or the right to be free of unlawful restraint.

Hill's reliance on *Begay* is misplaced. *Begay* involved interpretation of the Armed Career Criminal Act (ACCA), which imposes a mandatory 15-year prison term upon a felon who unlawfully possesses a firearm and who has three or more prior convictions for committing certain drug crimes or "a violent felony."

18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as, *inter alia*, a crime punishable by more than one year's imprisonment that "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id.* § 924(e)(2)(B)(ii) (emphasis added); *see also* U.S.S.G. § 4B1.2(a)(2) (nearly identical Guideline provision)*.* In *Begay,* the Supreme Court held that the provision's listed examples illustrate the kinds of crimes that fall within the scope of the residual clause ("*otherwise involves conduct . . . .*"). *See* 553 U.S. at 142.

We have previously construed and denied similar arguments raised by defendants relying on the statutory interpretation in *Begay.* In *United States v. Taylor*, 620 F.3d 812, 813 (7th Cir. 2010), the defendant objected to the district court's enhancement for using physical restraint to facilitate the commission of the offense, *see* U.S.S.G. § 1B1.1 cmt. n.1(K). The defendant in that case argued that pursuant to *Begay,* the examples of "physically restraining" in the commentary—"tied, bound, or locked up"—served to limit application of the enhancement and excluded his conduct—pointing a gun at a bank teller to control her movement. *Id.* at 813-14. We disagreed. We noted "that a statutory list of examples of conduct that violates the statute can be a clue to the statute's intended scope." *Id.* at 814. We then reasoned that the essential character of conduct subject to the physical-restraint guideline is depriving a person of his freedom of physical movement, which can be accomplished by means other than creating a physical barrier to movement. *Id.*

We applied that same reasoning in *United States v. Landwer,* 2011 WL 1585080, at \*2-3 (7th Cir. Apr. 28, 2001), where the defendant challenged his sentencing enhancement for using "sophisticated means" to perpetrate a scheme, *see* U.S.S.G. § 2B1.1 cmt. n.8(B). Landwer similarly argued that in accord with *Begay,* the examples in the commentary should serve as a limitation on the meaning of "sophisticated means." *Id.* at \*2. Citing *Taylor,* we stated that the essential character of the listed examples is ascertained "by looking to interpretations or factual similarities present in our past decisions." *Id.* at \*3. Under that approach, we held that the defendant's "interpretation of sophisticated means—which confines the guideline's application to crimes that use uncommon resources or are nearly untraceable—appears too narrow." *Id.*

Our holding in *Taylor* was reinforced by *Sykes v. United States*, ___ U.S. ___, 2011 WL 2224437, \*6 (June 9, 2011), which clarified that the offenses enumerated in § 924(e)(2)(B)(ii) "provide guidance" in determining which conduct falls within the residual clause. In *Sykes,* the defendant argued that the Court's decision in *Begay* required ACCA predicates to be purposeful, violent, and aggressive. The Court disagreed, reasoning that the phrase '"purposeful, violent, and aggressive' has no precise textual link to the residual clause, which requires that an ACCA predicate 'otherwise invovl[e] conduct that presents a serious potential risk of physical injury to another.'" *Id.* at \*8. The Court concluded that the residual clause imposes enhanced punishment when the relevant prior offenses involved a potential

risk of physical injury similar to that presented by the enumerated offenses. *Id.* at *10.

The commentary at issue here provides examples of officials in "sensitive positions" and includes "*any* other similarly situated individual." U.S.S.G. § 2C1.1 cmt. n.4(B) (emphasis added). Hill's limiting interpretation of the commentary is neither in line with the Commission's use of the word "any," which indicates a broad inclusion of similarly situated individuals, nor other provisions of the commentary, which expressly decline to narrowly construe U.S.S.G. § 2C1.1. *See* U.S.S.G. § 2C1.1 cmt. n.1 ("'[P]ublic official' shall be construed broadly."); *Id.* at cmt. background ("The object and nature of a bribe may vary widely from case to case . . . consequently, a guideline for the offense must be designed to cover diverse situations."). The enumerated examples are not categories and not intended to be exhaustive. *Cf. United States v. Harris*, 490 F.3d 589, 595 (7th Cir. 2007) (applying a broad definition to "financial institution" for purposes of the enhancement in U.S.S.G. § 2B1.1(b)(13)(B)(i), and noting that "the list of financial institutions in the Guidelines note is non-exhaustive and contains a catch-all provision that requires that 'any similar entity' be considered a financial institution"); *United States v. Ferrera*, 107 F.3d 537, 541 (7th Cir. 1997) (finding that examples in U.S.S.G. § 2F1.1 cmt. n.4 were not intended to be exhaustive). The commentary requires a flexible approach in applying the enhancement to varying factual situations, and the examples demonstrate the Commission's intent to apply the enhancement to a range of public officials with varying responsibilities.

Hill's limiting interpretation of the enhancement—that it only applies to positions impacting fundamental rights—isn't supported by the text of the commentary or cases applying the enhancement. *See, e.g., United States v. Matzkin*, 14 F.3d 1014, 1021 (4th Cir. 1994) (finding that supervisory engineer for Navy who was on the contract award review panel was in a sensitive position because he made recommendations to Navy officials on large procurements and had considerable discretion and influence in these matters); *see also ReBrook*, 58 F.3d at 970 (finding that part-time attorney for state's lottery commission held sensitive position when he used confidential information to purchase shares in a company that would be awarded a state contract). Because such a limitation has no textual link, we decline to read it into the commentary. *See, e.g., Sykes*, 2011 WL 2224437, at *9 (stating that the phrase "purposeful, violent, and aggressive" has no precise textual link to ACCA's residual clause).

The district court properly found that Hill's position impacted applicants' ability to obtain and renew licenses. His de facto authority to deny license applications or suspend licenses (even if temporary and subject to review), could significantly impact businesses' ability to operate and earn revenue. This authority placed Hill in a sensitive position.

**B.**

The district court properly calculated the guideline range and then exercised its discretion to apply an above-guideline sentence. "We review the substantive reason-

ableness of a sentence for an abuse of discretion, even when it is outside the guidelines." *United States v. Courtland*, Nos. 10-2436, 10-2468, 10-2469, ___ F.3d ___, 2011 WL 1565461, at *4 (7th Cir. Apr. 27, 2011). "A sentence is reasonable if the district court properly calculated the guidelines range and then exercised appropriate discretion in applying the factors specified in 18 U.S.C. § 3553(a)." *United States v. Vaughn*, 614 F.3d 412, 414 (7th Cir. 2010). The court can "impose a sentence outside the guidelines range so long as the judge explains why that sentence is appropriate under § 3553(a)." *Id.* at 415. Hill doesn't challenge the court's application of the § 3553(a) factors and the judge's explanation was more than adequate to justify Hill's sixty-month sentence.

The district judge properly calculated Hill's guideline range at 41 to 51 months' imprisonment and concluded that a higher sentence was necessary to account for the considerations relevant under § 3553(a). The court first pointed to the widespread corruption in East St. Louis and the need to deter future public corruption. It then pointed out that Hill made misrepresentations on his unemployment compensation form; he stated falsely that he was unaware of why he had been discharged from office. The district court found it significant that Hill continued to collect unemployment while he was under federal investigation and even after he pled guilty. The court next addressed Hill's use of his position to engage in the egregious conduct of soliciting sexual favors as a precondition of licensing. The court reasoned that "[t]his perversion is unaddressed by the guidelines which tend to be economic[ally] oriented." Finally, citing

U.S.S.G. § 2C1.1 cmt. n.7, the court found that Hill's conduct was part of a systematic or pervasive corruption of a government office, noting again the extensive corruption in East St. Louis and the resulting loss of public confidence in government officials. The court also cited certain mitigating factors, such as Hill's education (he held a master's degree), lack of criminal history, age (32 years old), repeated blood donorship (Hill donated blood thirty-seven times over the course of seven years, improving the health of a young man who had sickle cell anemia), and his difficult formative years (his father was murdered when he was three and he grew up in public housing), but found that this was a serious crime that required a sentence sufficient for individual and general deterrence. The court then found that a sixty-month sentence was sufficient, but not greater than necessary, to meet the purposes of § 3553(a).

The district judge provided a model statement of all the reasons that justify this modest sentence for the blatant abuse of power by a significant official in a corrupt area of Illinois. The court's sentencing considerations were proper, and together constituted permissible rationale for imposing this reasonable above-guidelines sentence.

## C.

As a final matter, we note that even if the district court had miscalculated the guidelines, any such error would have been harmless. "To prove harmless error, the government must be able to show that the Guidelines error did not affect the district court's selection of the

sentence imposed." *Abbas*, 560 F.3d at 667 (quotation omitted). When we are convinced that the sentence would have been the same absent the error, we deem the error harmless. *Id.* We have found procedural errors harmless where the district court made it clear that it would have imposed the same sentence even if the error had not been made. *Id.; see also United States v. Anderson*, 517 F.3d 953, 965-66 (7th Cir. 2008). In *Abbas*, we found that even though the district court committed a significant procedural error by improperly applying § 2C1.1 and as a result, miscalculating the guideline range, the error was harmless where the sentencing judge "expressly stated that she would have imposed the same sentence even if § 2C1.1 did not apply to the defendant's sentence." 560 F.3d at 667. We noted that the sentencing judge "did so with a detailed explanation of the basis for the parallel result; this was not just a conclusory comment tossed in for good measure." *Id.*

After thoroughly discussing relevant § 3553(a) factors, the district court expressly stated that Hill would have received the same sentence regardless of the guideline calculation and provided ample justification for this conclusion. The district court concluded: "The sentence I'm going to impose in this case, frankly, is the same sentence I would give however if there were no guidelines . . . ." As in *Abbas*, the judge engaged in a thoughtful and meaningful review of the facts he relied on in determining an appropriate sentence and stated clearly that the sentence was based on the factors enumerated in § 3553(a) and not upon the guideline calculation. The judge properly exercised his discretion in determining

that an above-guideline sentence was appropriate, and we are convinced that he would have imposed the same sentence regardless of the guideline calculation. Thus, even if there had been error in the guideline calculation, we would deem it harmless.

AFFIRMED.