POSNER, Circuit Judge.
In Heck v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held (so far as relates to this case) that a person who has been convicted of a crime cannot seek damages or other relief under federal law (as in a suit under 42 U.S.C. § 1983 or Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Edüd 619 (1971)) for violation of his rights by officers who participated in the investigation or prosecution of the criminal charge, if “a judgment in favor of the plaintiff [in the civil suit] would necessarily imply the invalidity of his conviction or sentence.” The district judge held that a judgment in Hill’s favor would, and so dismissed Hill’s suit (a Bivens action), precipitating this appeal.
Hill had pleaded guilty in the criminal case to attempted extortion, in violation of 18 U.S.C. § 1951; and to making a false statement to federal investigators concerning his extortionate activities, in violation of 18 U.S.C. § 1001(a)(2). (He was the Deputy Liquor Commissioner of East St. Louis, Illinois, and was alleged to have extorted bribes from liquor licensees.) He was sentenced to 60 months in prison. We affirmed the judgment in United States v. Hill, 645 F.3d 900 (7th Cir.2011).
The two defendants in this civil suit, an FBI agent and an IRS agent, had interviewed the plaintiff at his home before he was indicted and had gotten him to make damaging admissions. In this civil suit for damages he claims that the defendants forced their way into his house with drawn weapons, searched the house, seized and kept his lawfully owned handgun, and twirled a loaded gun in “John Wayne” fashion, making Hill “so scared” that he was “in tears.” He felt “like a hopeless prisoner” in his own home when he tried to answer his phone and was “placed at gunpoint.” ' While being questioned he felt disoriented, was crying from the pain in his head, and blacked out, but the agents did not call for medical assistance — he later learned that he had suffered a stroke. He was “under the gun, literally,” he says, and “felt pressured and under duress” to answer the defendants’ questions. We accept these allegations as true for purposes of this appeal.
He argues that by detaining him against his will, searching his home, and seizing his gun, all without his consent, plus using excessive force, ignoring his medical needs, and coercing him to answer their questions, the defendants violated his Fourth Amendment right to be free from an unreasonable search and seizure and his Fifth Amendment right to due process of law.
His specific Fourth Amendment claims are illegal entry, unlawful detention, unlawful seizure of a gun of which he was the lawful owner, deliberate indifference to his medical needs, and use of excessive force. These claims were properly brought under the Fourth Amendment because the injuries complained of were inflicted before there had been a judicial determination of probable cause. Currie v. Chhabra, 728 F.3d 626, 629-30 (7th Cir. 2013); Lopez v. City of Chicago, 464 F.3d 711, 719 (7th Cir.2006).
His Fifth Amendment claim concerns three statements that he made to the officers — statements that he alleges were ex *245 tracted from him by the tactics of intimidation described above. The statements are his denial to the officers that he had sent a bagman to collect bribes for him (this lie was the basis of the false-statement charge against him); his admission minutes later that the denial was indeed a lie; and his acknowledging that the mayor, who doubled as the Liquor Commissioner of East St. Louis (the plaintiff was as we noted the Deputy Liquor Commissioner), had failed to exercise proper supervision over him, a failure that facilitated his bribe taking.
The Fourth Amendment claims that we have listed are not barred by the principle of Heck v. Humphrey (such claims rarely are, see Wallace v. City of Chicago, 440 F.3d 421, 426-28 (7th Cir. 2006), affirmed under the name Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir.2006); Covey v. Assessor of Ohio County, 777 F.3d 186, 197 (4th Cir.2015); Hooper v. County of San Diego, 629 F.3d 1127, 1133-34 (9th Cir. 2011); Hughes v. Lott, 350 F.3d 1157, 1160-61 (11th Cir.2003)). If the police roughed up Hill, seized his gun without justification, waved a loaded gun in his face, and so on, these outrages, constituting violations of his Fourth Amendment right not to be subjected to an unreasonable search and seizure, would entitle him to damages for physical and psychological injury resulting from the search and seizure and for the expropriation of his gun. That would be true even if he’d never been prosecuted. But such violations of his rights would not exonerate him from the false statement and attempted-extortion charges that were the only grounds of his convictions.
One of Hill’s due process claims, in contrast, challenges his false-statement conviction head on. That is the claim that he was coerced to answer the officers’ question whether he used a bagman. Coerced to speak, he lied, and the lie was the basis of his conviction for making a false statement to the officers. The point was not that he was coerced to lie; doubtless the officers would have preferred a truthful answer, which would have nailed down his guilt of extortion but left no room for his also being convicted of making á false statement to the government. But had he not been coerced to speak, and as a result had remained silent, or (perhaps in response to noncoercive questioning, told the truth), he could not have been convicted of making a false statement. Therefore proof in this civil case that the conviction was based on a violation of his constitutional rights would be inconsistent with the conviction and so is barred by Heck.
This sounds not like a due process claim, but rather like a self-incrimination claim. Hill was forced to speak, and in speaking he incriminated himself by making a false statement. He doesn’t mention self-incrimination, but since we are vacating much of the judgment and remanding, he may on remand decide to add a self-incrimination claim and the judge might let him do so. Furthermore, as we’ll note at the end of this opinion, he might argue that his false statement was the product of the excessive-force violation of the Fourth Amendment that he alleges. In an effort to stave off a further appeal, we shall consider whether such an addition to the plaintiffs suit would be barred by Heck v. Humphrey.
A Fourth Amendment claim based on violence or threats used to extract the statement (conduct that violates the Fourth Amendment “right of the people to be secure in their persons ... against unreasonable searches and seizures”) — a claim unrelated to the truth or falsity of the statement — is very different from a *246 Fifth Amendment self-incrimination claim based on the use of the statement to convict him of making a false statement. The first claim, a Fourth Amendment excessive-force claim that the plaintiff could press in this civil case even if his lie about the bagman had not been used in the criminal case, is unproblematic; a self-incrimination claim, in contrast, would be deeply problematic, as we’re about to see.
But the fact that Hill admitted the lie — the admission being his second statement — along with the further fact that he admitted that the mayor hadn’t supervised him effectively (the third statement), were not grounds for the false-statement charge: neither telling the truth nor committing extortion is making a false statement. The lie was the false-statement crime of which he was convicted; the admission was merely evidence of the lie, and as explained in Heck “a suit for damages attributable to an allegedly unreasonable search may [be maintained] even if the challenged search produced evidence that was introduced in a state criminal trial that resulted in the plaintiffs still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiffs conviction was unlawful.” Heck v. Humphrey, supra, 512 U.S. at 487 n. 7, 114 S.Ct. 2364 (emphasis in original and citations omitted); see also Apampa v. Layng, 157 F.3d 1103, 1105 (7th Cir. 1998).
These observations are pertinent because we know from the presentence report that the government had ample evidence, even without Hill’s confession, to prove that he had lied — it had video and audio surveillance of his bagman collecting payments on his behalf. The use against Hill of his admission of having lied (the use consisting of including the statement in the stipulation of facts as a factual basis for the plea — had Hill’s statements never been “used” against him he wouldn’t have a Fifth Amendment claim, Chavez v. Martinez, 538 U.S. 760, 767, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)) was thus a harmless error.
The same is true of Hill’s statement about the absence of mayoral oversight, which earned him an increase in his sentence for being a “public official in a high-level decision-making or sensitive position.” U.S.S.G. § 201.1(b)(3). The absence of oversight amounted to a de facto delegation of mayoral authority to him; his statement that “the [m]ayor does not really know what he is doing in reference to liquor licenses” revealed that Hill occupied a high-level decisionmaking position. Other evidence pointed in the same direction. Hill and the mayor had been friends since college; Hill stood in for the mayor' at public events; and the mayor had created the position of Deputy Liquor Commissioner just for Hill. United States v. Hill, supra, 645 F.3d at 907. The presentence report, moreover, reveals that local business owners provided statements to the government about the extent of Hill’s authority. One of the statements was that the mayor had “referred [the business owner in question] to Hill, whom [the may- or] identified as the individual who could renew [the business owner’s] liquor license.”
So even if the second and third statements were coerced, Hill’s false-statement and attempted-extortion convictions and sentences would not be undermined. In contrast, his response to the question whether he had sent a bagman to collect bribes from liquor licensees was not only a ground but the ground of his conviction for making a false statement. As we noted earlier, had he remained silent — made no *247 statement — he could not have been convicted of making a false statement. That makes this case like Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir.2003), in which, as we explained in McCann v. Neilsen, 466 F.3d 619, 621 (7th Cir.2006), “specific factual allegations in the complaint [in this case, that Hill was forced to speak, and in speaking lied] are necessarily inconsistent with the validity of the conviction.”
Now one might be inclined to think that a lie is a lie; if the officers had asked Hill politely whether he used a bagman, he would have lied and been convicted; how then could the use of force have affected the outcome of his criminal trial? But we can have no idea what he would have said had they asked him politely. He might have told the truth, but instead he might have lied in terror — he might have feared that if he admitted using a bagman, the officers, convinced now of his guilt, would really have beaten him up. Had they asked him politely he might have ’fessed up to his use of a bagman, as indeed he did shortly afterward.
We can make this point a little clearer by reference to the venerable distinction between “actus reus” and “mens rea.” The former is the guilty act, the latter the guilty mind that decided to do the guilty act. An act, Holmes explained, “is always a voluntary muscular contraction, and nothing else.” O.W. Holmes, Jr., The Common Lato 91 (1881). In this case the voluntary muscular contraction was Hill’s mouthing a denial that he used a bagman. But was there a guilty mind? If terror caused him to lie, the lie was not willful, which would distinguish this case from such cases as Bryson v. United States, 396 U.S. 64, 69-70, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), where we read that “the jury’s verdict reflects a determination that petitioner’s false statement was knowingly and willfully made. This negates any claim that petitioner did not know the falsity of his statement at the time it was made, or that it was the product of an accident, honest inadvertence, or duress”; see also United States v. Knox, 396 U.S. 77, 83-84, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938); United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205 (1937). If the lie was intentional rather than a mere terror reflex, there would be a guilty mind but a defense of duress, see Dixon v. United States, 548 U.S. 1, 6-7, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006), so the consequence — a challenge in the civil proceeding to the correctness of his conviction of making a false statement— would be the same. If the agents were torturing him to speak and Hill thought they’d brutalize him further if he implicated himself, lying would have been his only recourse to avoid further brutalization.
Against concluding that basing a civil suit on coercion to speak is barred by Heck it can be argued that Hill’s guilty plea was the entire basis for the false-statement conviction, as in Lockett v. Ericson, 656 F.3d 892, 896-97 (9th Cir.2011), that the plea was voluntary even if the lie may not have been, that the civil suit does not challenge the plea, and that anyway a conviction based on a guilty plea can rarely be collaterally attacked. United States v. Broce, 488 U.S. 563, 574,109 S.Ct. 757,102 L.Ed.2d 927 (1989); Connors v. Graves, 538 F.3d 373, 378 (5th Cir.2008). Although rarely is not never — see United States v. Broce, supra, 488 U.S. at 574-76, 109 S.Ct. 757, citing Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), and Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) — the exceptions authorized by those cases are not applicable to this case.
But the Supreme Court in Heck was concerned not only with limiting col *248 lateral attacks on criminal judgments, but also with the unseemliness of conflicting judicial outcomes, see 512 U.S. at 484-85, 114 S.Ct. 2364, as when “a judgment in favor of the plaintiff [in his civil suit] would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiffs action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.” Id. at 487, 114 S.Ct. 2364 (emphasis in original).
“Imply” is not synonymous with “invalidate.” A judgment in favor of Hill’s claim in this civil suit that his conviction of making a false statement was unconstitutional because it rested on police coercion would not invalidate the conviction, or provide a ground for a suit for postconviction relief (release from prison), but it would cast a shadow over the. conviction. It would allow Hill to argue that he had been determined by a court to have been unjustly convicted and sentenced but was forbidden to obtain relief on the basis of that finding. It would thus enable him to indict the legal culture. This Heck forbids. As we put it in Dominguez v. Hendley, 545 F.3d 585, 588 (7th Cir.2008), “a § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction is set aside. Otherwise, that civil claim would imply the invalidity of the outstanding conviction and would thus constitute.a collateral attack on the conviction through an impermissible route.” It would not be a collateral attack in the literal sense, because a judgment in favor of the plaintiff would not invalidate his conviction. But the implication of invalidity would be enough' to establish the impropriety of the civil suit. Hill thus can’t be permitted in his civil suit to prove that his first statement was coerced, though he can complain about the beating or threats or other brutalities that induced the three statements to the extent the brutalities inflicted injuries (whether physical or mental) for which tort damages can be awarded.
All that matters, in short, is that Hill be forbidden to assert on remand that the statement on which his conviction of making a false statement to the government was predicated was coerced, for if it was coerced then an element of his conviction would be negated. Se.e id. at 589. (There are even hints in his complaint, which Hill might try to amplify on remand, that he made no false statement to the officers, coerced or otherwise — that their report of the interview is an attempt, that worked, to frame him for a false-statement crime that he did not commit. To allow him to present that argument in this civil case would be an even clearer violation of Heck.)
We are not suggesting that there is a privilege to lie in response to an improper interrogation. “[I]t cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government’s right to ask questions — lying is not one of them. A citizen.may decline to answer the question, or answer it honestly, but he capnot with impunity knowingly and willfully answer with a falsehood.” Bryson v. United States, supra, 396 U.S. at 72, 90 S.Ct. 355; see also United States v. Mandujano, 425 U.S. 564, 583-84, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); and the Knox, Kay, and Kapp cases cited earlier. We add that Brogan v. United States, 522 . U.S. 398, 404-05, 118 S.Ct. 805, 139 *249 L.Ed.2d 830 (1998), rejected a claim that the Fifth Amendment barred a false-statement conviction under 18 U.S.C. § 1001 (the ground of Hill’s false-statement conviction as well) merely because “it places a ‘cornered suspect’ in the ‘cruel trilemma’ of admitting guilt, remaining silent, or falsely denying guilt.”
But this is not a case in which the government “should not have asked” the critical question (the question whether Hill used a bagman). There would have been nothing wrong with the government’s asking him that question. The wrong lay in beating or terrorizing him into answering. “The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles.” Lego v. Twomey, 404 U.S. 477, 485, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); see also Colorado v. Connelly, 479 U.S. 157, 163, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); Brown v. Mississippi 297 U.S. 278, 286, 56 S.Ct. 461, 80 L.Ed. 682 (1936) (“the rack and torture chamber may not be substituted for the witness stand”).
Had the officers, foregoing brutality, merely said to Hill “we want to ask you a question but of course you don’t have to answer it,” and he had lied, he would be guilty of making a false statement to the government. But as far as anyone can know, had they said that, he would not have answered the question at all — in other words, he would have said nothing — or he might even have answered it truthfully; but in either case he could not have been convicted of making a false statement. Were he allowed to prove this in this civil suit, he would be denying the validity of his conviction. And that Heck forbids.
For completeness we note that while we have characterized Hill’s claims regarding the .three statements as Fifth Amendment claims, they would fare the same as Fourth Amendment claims based on the defendants’ alleged use Of excessive force to extract an incriminating statement from him (his denial that he used a bagman). In Evans v. Poskon, 603 F.3d 362, 364 (7th Cir.2010), in which the defendant was convicted of attempted murder and resisting arrest, we said that
a fourth-amendment claim can coexist [that is, without violating the Heck principle] with a valid conviction. [Evans] contends three things: (1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody. (Evans says that his skull was fractured and his face mangled, leading to three surgeries and bone grafts. He also contends that his vision has been permanently impaired. These are not normal consequences of arrest.) Proposition (1) is incompatible with his conviction; any . proceedings based on this contention must be stayed or dismissed under Wallace {v. Kato ] or Heck. But propositions (2) and (3) are entirely consistent with a conviction for resisting arrest. See Gilbert v. Cook, 512 F.3d 899 (7th Cir.2008); VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006); Dyer v. Lee, 488 F.3d 876, 881 (11th Cir.2007) (collecting similar decisions in other circuits). These aspects of the suit can proceed.
Evans’s first contention, like Hill’s first, implicitly challenged his conviction; his second and third contentions, like Hill’s second and third contentions, did not— Evans’s because there was no inconsistency between his second and third contentions and the conviction, Hill’s because his convictions rested comfortably on evidence unrelated to his second and third contentions.
*250 Wallace v. City of Chicago, supra, which emphasizes that most Fourth Amendment claims survive Heck, thus coexists with Evans v. Poslcon, supra, which points out that a few do not. We remarked that coexistence in Parish v. City of Elkhart, 614 F.3d 677, 681-82 (7th Cir.2010); see also Walden v. City of Chicago, 755 F.Supp.2d 942, 954-55 (N.D.Ill.2010).
In summary, the only one of Hill’s claims that is barred by Heck v. Humphrey from being asserted in this civil case ‘is his claim that his false statement to the officers was coerced. The district court’s judgment (which dismissed the entire suit) is therefore affirmed in part and reversed and remanded in part.