**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 18, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILLIAM BADONI,

    Defendant - Appellant.

No. 25-2087
(D.C. No. 1:23-CR-00473-KWR-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **EID**, Circuit Judges.
_____

This appeal involves the sentence imposed on Mr. William Badoni for conspiring to bribe a public official and laundering the proceeds.

Mr. Badoni was a contractor and bid on projects for a residential school. To ensure that he won the bids, Mr. Badoni collaborated with a maintenance supervisor at the school, Mr. Elroy Harry. Mr. Harry made

---

[*]    The parties waived oral argument, and it would not help us decide the appeal. So we have decided the appeal based on the record and the parties' briefs. _See_ Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

sure that Mr. Badoni won the bids by scheming to submit fake bids, sharing information about rival bids, and persuading trustees on how to compare the bids. After Mr. Badoni's bids were accepted, he sought reimbursements for inflated charges disguised as cost overruns. Mr. Harry helped Mr. Badoni by getting approval for these reimbursements. Mr. Badoni paid kickbacks to Mr. Harry in exchange for persuading the trustees to accept his bids and to approve his reimbursements for inflated charges.

For sentencing purposes, the base offense level was 12. But the district court applied enhancements increasing the offense level to 27. This appeal involves two of the enhancements:

1.   The offense involved a "public official in a high-level decision-making or sensitive position" (U.S.S.G. § 2C1.1(b)(3)).

2.   The benefit exceeded $250,000 (U.S.S.G. § 2B1.1(b)(1)(G), 2C1.1(b)(2)).

In reviewing the application of these enhancements, we conduct de novo review over the district court's legal conclusions and apply the clear-error standard to the underlying factual findings. *United States v. Rocha*, 145 F.4th 1247, 1260 (10th Cir. 2025).

The first issue is whether the district court erred in determining that Mr. Harry was a "public official in a high-level decision-making or sensitive position." This determination involved two questions:

1.   Was Mr. Harry a "public official"?

2

2.    Was his position sensitive or did it involve a high level of decision-making?

The term *public official* is construed broadly. U.S.S.G. § 2C1.1 cmt. 1. A *public official* includes individuals responsible for carrying out governmental programs. U.S.S.G. § 2C1.1 cmt. 1(E). And Mr. Badoni doesn't deny the existence of a governmental program.[1]

But the enhancement applies only to individuals employed in positions of sensitivity or high levels of decision-making. U.S.S.G. § 2C1.1(b)(3). It's enough if the individual has substantial influence over the decision-making process. U.S.S.G. § 2C1.1 cmt. 4(A).

The district court concluded that Mr. Harry qualified as *a public official* based on two factual findings:

1.    He could help manipulate the bids and persuade the board of trustees to accept Mr. Badoni's bids.

2.    Mr. Harry knew enough about the bids and bidding process to ensure that the board would accept Mr. Badoni's bids.

The district court didn't clearly err in making these findings, and they allowed the court to characterize Mr. Harry's position as sensitive. *See United States v. Whiteford*, 676 F.3d 348, 365 (3d Cir. 2012) (upholding an enhancement under § 2C1.1(b)(3) for a bid-rigging scheme because the defendant could recommend projects and was privy to confidential information about bids); *United States v. Matzkin*, 14 F.3d 1014, 1021 (4th

---

[1]    The residential school had obtained federal funding.

3

Cir. 1994) (upholding a public-official enhancement because a coconspirator had participated on a panel that could recommend government contracts).[2]

The commentary to § 2C1.1 gives examples of individuals holding positions of sensitivity: prosecutors, judges, and agency administrators. Given these examples, Mr. Badoni argues that the term *public official* covers only an individual with extensive discretionary authority. U.S.S.G. § 2C1.1 cmt. 4(B). But these examples aren't exhaustive; the comment includes "any other similarly situated individuals." *See United States v. Hill*, 645 F.3d 900, 911 (7th Cir. 2011) (stating that these "enumerated examples" are "not intended to be exhaustive"). The use of *any* "indicates a broad inclusion of similarly situated individuals." *Hill*, 645 F.3d at 910–11. Given the broad inclusion of similarly situated individuals, the comment reflects the Sentencing Commission's intent to apply the enhancement to public officials with varying responsibilities. *Id.* at 911. We thus conclude that the district court didn't err in applying the enhancement.

---

[2]    Mr. Badoni argues that Mr. Harry didn't occupy a high-level position to make decisions. But the decision-making power wasn't necessary if the position was sensitive. U.S.S.G. § 2C1.1(b)(3); *see United States v. Hill*, 645 F.3d 900, 908 (7th Cir. 2011) (declining to decide whether the defendant was "a high-level decision-maker" under § 2C1.1(b)(3) because he had held a sensitive position).

The second issue is whether the district court erred in finding a benefit exceeding $250,000. U.S.S.G. §§ 2B1.1(b)(1)(G), 2C1.1(b)(2). The district court didn't need to calculate the benefit "with exact precision;" a reasonable estimate would suffice. *United States v. Galloway*, 509 F.3d 1246, 1251 (10th Cir. 2007). In assessing the reasonableness of the court's estimate, we review the underlying factual findings for clear error. *United States v. Conley*, 89 F.4th 815, 819 (10th Cir. 2023).

In calculating the benefit, the court relied largely on Mr. Badoni's change orders on four projects. The change orders totaled $333,893.69.

**Mr. Badoni's Fraudulent Change Orders**

| Project | Original Price | New Price | Increased Price |
|---|---|---|---|
| Basketball Court | $40,751.49 | $246,120.22 | $205,368.73 |
| East Wall and Fire Door | $49,555.00 | $83,898.36 | $34,343.36 |
| Cafeteria | $98,946.76 | $103,928.76 | $4,982.00 |
| Decking | $94,562.00 | $183,761.60 | $89,199.60 |
| | Total Increased Price through Change Orders | | $333,893.69 |

So the court used this figure ($333,893.69) as the benefit to Mr. Badoni from his fraudulent use of change orders. But the court also found that Mr. Badoni had overcharged the residential school $20,050.50. So the court calculated the total benefit as $353,944.19. R. vol. 1 at 75–76.[3]

---

[3] The court alternatively calculated the loss as $789,641.33 for the costs to repair Mr. Badoni's work. We need not address the court's alternative calculation of loss.

**Total Fraudulent Benefit**

| | |
|---|---|
| Change Orders | $333,893.69 |
| Excessive Fees | $20,050.50 |
| Total | $353,944.19 |

The district court didn't err in making this calculation. For the calculation, the court needed to distinguish between the fraudulent profit and the money that he had received in exchange for his services. *United States v. Hess*, 106 F.4th 1011, 1026 (10th Cir. 2024). The district court didn't clearly err in distinguishing between these amounts. For example, the court used the bids as fair benchmarks of the value provided to the school. But the court also concluded that Mr. Badoni had fraudulently profited by increasing the prices through the change orders. This conclusion was reasonable because

- an investigator had testified that many of the change orders were fraudulent and

- Mr. Badoni had told Mr. Harry that many of the change orders weren't "legit," R. vol. 1 at 46.

*See United States v. McNair*, 605 F.3d 1152, 1165, 1230 (11th Cir. 2010) (upholding an enhancement under § 2C1.1 based on the amount of fraudulent change orders that financially benefited contractors). Similarly, the court could reasonably find that Mr. Badoni had inflated his fees by $20,050.50.

Mr. Badoni argues that the district court should have reduced the amount of the change orders based on the additional services to the school.

6

But a law-enforcement officer testified that the work described in the change orders had been unnecessary and had served only to enrich Mr. Badoni.[4] *See United States v. Hess*, 106 F.4th 1011, 1026 (10th Cir. 2024) (concluding that the defendant was not entitled to an offset under § 2C1.1 because the additional goods and services were just business expenses or ways to facilitate fraud). So the court didn't clearly err in finding a fraudulent benefit exceeding $250,000.00.

Because the court didn't err in imposing the two enhancements, we affirm the sentence.

Entered for the Court


Robert E. Bacharach
Circuit Judge

---

[4]    The law-enforcement officer acknowledged that Mr. Badoni might have done the work described in the change orders, but characterized the work as an unnecessary way to milk the trustees for more money.