In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3866

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

OMAR ABBAS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 747—**Amy J. St. Eve**, *Judge.*

ARGUED SEPTEMBER 24, 2008—DECIDED MARCH 26, 2009

Before POSNER, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Omar Abbas challenges the application of U.S.S.G. § 2C1.1 (extortion under color of official right) to his sentence for impersonating an FBI agent and argues that he should be re-sentenced. While we agree that impersonation of a public official is not action "under color of official right" (and thus does not qualify for treatment under § 2C1.1), we find that the sentencing error was harmless and that Abbas's sentence was reasonable. Accordingly, we affirm.

## I. Background

Omar Abbas ran scams on several unsuspecting immigrants in the Chicago area, offering to make various immigration and criminal problems go away in return for cash. As part of his scheme, he occasionally claimed to be an FBI agent and even flashed a badge when one of his victims asked for proof. When a friend of one of his victims got suspicious, Abbas reported the friend to the FBI as a Hamas member, a claim the FBI debunked.

Abbas, however, had no relationship with the FBI or the Secret Service, the organization with which he claimed affiliation once he was taken into custody. In fact, he had no ability whatsoever to influence the outcome of the proceedings in which his victims were involved. Instead, he took the cash (on at least one occasion) to a casino in Indiana where he used the money to gamble.

He was eventually indicted on five counts: extortion under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951, impersonation of an FBI Special Agent, 18 U.S.C. § 912, transporting in interstate commerce U.S. currency stolen or gained by fraud, 18 U.S.C. § 2314, and two counts of making false statements to FBI agents, 18 U.S.C. § 1001(a)(2).

Abbas pled guilty to the currency transportation charge and took the four other counts to trial. At trial, he was acquitted of the Hobbs Act charge, but convicted of impersonating an FBI agent and the two counts of making false statements. Per the Pre-Sentence Report and the government's recommendation, the district court calculated Abbas's sentence using U.S. Sentencing Guidelines

§ 2C1.1, pursuant to the cross reference found in U.S.S.G. § 2J1.4. It is the application of § 2C1.1 that forms the issue in this case.

The sentence for impersonating an FBI agent is determined by a judge according to § 2J1.4 of the Guidelines. Section 2J1.4(c)(1) contains a cross-reference that reads, "If the impersonation was to facilitate another offense, apply the guideline for an attempt to commit that offense, if the resulting offense level is greater than the offense level determined above." Even though the defendant was acquitted by the jury of extortion under color of official right, the sentencing judge found by a preponderance of the evidence that the defendant's impersonation was to facilitate color of official right extortion. The judge used § 2C1.1 (the color of official right guideline) to calculate the defendant's offense level. Applying this guideline, the judge sentenced the defendant to 29 months' imprisonment, and indicated that even if the Guidelines calculation was incorrect, she would impose the same sentence based on the factors listed in 18 U.S.C. § 3553.

## II. Extortion Under Color of Official Right

We review both the district court's interpretation of the Guidelines and its application of the Guidelines to the facts *de novo*. *United States v. Thomas*, 520 F.3d 729, 736 (7th Cir. 2008); *United States v. Haddad*, 462 F.3d 783, 793 (7th Cir. 2006). The district court found, over Abbas's objection, that § 2C1.1 was an appropriate cross-reference to apply to his conviction, adopting a statement by this court in

*United States v. McClain*, 934 F.2d 822, 831 (7th Cir. 1991), that private citizens who masquerade as public officials are subject to extortion "under color of official right" liability. In addition, the district court relied on what it referred to as the legislative history of the Hobbs Act to support its reading. On appeal, the government argues that we should adopt this rationale and affirm the dictum in *McClain* because the resulting liability for masqueraders under the Hobbs Act is consistent with the plain language of the statute. Abbas, of course, argues the exact opposite.

Section 2C1.1 applies to "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions." The phrase "Extortion Under Color of Official Right" at issue here matches the language of the Hobbs Act, 18 U.S.C. § 1951, which punishes anyone who "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion" and defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

The government does not argue that Abbas used or threatened force, or made his victims afraid. Instead, Abbas's victims were already afraid when he met them. One was afraid of being removed from the country; another was afraid for his son, who was incarcerated.

Abbas sought to capitalize on this fear and did so by pretending to be an FBI agent who could solve his victims' problems.[1] The question is whether, when Abbas stepped into this role, he committed extortion "under color of official right."

At the outset, we should note that *McClain* did not directly address this issue and therefore does not determine the outcome of Abbas's appeal. *McClain*, 934 F.2d at 836 (Easterbrook, J., concurring) (noting that "panels of this court will consider it their duty to examine the subject anew when finally seized of a concrete controversy"). *McClain* is factually very different from this case. *McClain* involved not an impersonator but a private citizen involved in a scheme to bribe Chicago officials who, like Abbas, was acquitted of the "official right" charge. However, at the same time McClain was convicted of several conspiracy charges with separate non-extortion predicate offenses. He appealed those convictions, arguing that statements admitted against him to prove the "official right" charge had unfairly prejudiced the jury on these other charges. It was against this backdrop that we noted that "as a general matter and with caveats as suggested here, proceeding against private citizens on an 'official right' theory is inappropriate under the literal and historical meaning of the Hobbs Act." *Id.* at 831.

---

[1] This is not to say that impersonators can never be convicted under the fear prong of the Hobbs Act definition of extortion. *See United States v. Ward*, 914 F.2d 1340, 1347 (9th Cir. 1990).

One of the caveats we suggested was that *McClain's* "analysis does not apply, for example, to a private person actually masquerading as a public official." *Id.* at 830. It was this limiting phrase in *McClain* that led the district court here to believe that application of § 2C1.1 was appropriate for Abbas, who was convicted of such a masquerade. While we agree with the analysis in *McClain* that private citizens generally cannot be considered to act "under color official right," we disagree that masqueraders are the exception to this general rule. We disagree based on our reading of the statute and the well-reasoned approach to the issue taken by our sister circuits.

Remarkably, there appears to be no source for the undisputed meaning of the term "under color of official right." The Supreme Court conducted a rigorous exegesis of the term in *Evans v. United States*, 504 U.S. 255 (1992), and reached the conclusion that extortion under color of official right did not require an official to solicit a bribe to incur criminal liability. More relevant to our purposes, however, is that the Supreme Court made it clear that "the portion of the [Hobbs Act] that refers to official misconduct continues to mirror the common-law definition" of extortion.[2] *Evans*, 504 U.S. at 264. *See also*

---

[2] Neither party seriously argues that we should interpret the term "under color of official right" as used in § 2C1.1 differently than we interpret the same phrase in the context of the Hobbs Act. Abbas does argue that the approach taken by the Sentencing Commission to the crime of extortion under color

(continued...)

*Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 402 (2003).

Thus, the government's argument that we can look to a plain reading of the "under color of official right" language, informed only by the dictionary definition of the word, is unavailing. "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Evans*, 504 U.S. at 259-60 (alteration in the original). "Or, as Justice Frankfurter advised, 'if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'" *Id.* at 260 n.3 (quoting Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)). The term "under color of official right" has been around for centuries. It appeared in Magna Carta-era England, was imported into New York state law, codified in the Hobbs Act,[3] and was subsequently

---

[2] (...continued)
of official right supports his argument that the term does not apply to impersonators. As noted below, we agree.

[3] As support for its position, the government points to a statement, relied upon by the district court, by Representative Samuel F. Hobbs during debate on an earlier version of the Hobbs Act where he defined "under color of official right" as "absence of right but pretended assertion of right." When pressed to explain, Rep. Hobbs said, "In other words, you pretend to be a police officer, you pretend to be a deputy

(continued...)

interpreted by the Supreme Court. *See Scheidler*, 537 U.S. at 402-03; James Lindgren, "The Elusive Distinction Between Bribery and Extortion: From the Common Law to the Hobbs Act," 35 UCLA L. Rev. 815 (1988). Extracting meaning from the phrase requires an examination of precedent and traditions of interpretation, rather than a sort of *tabula rasa* consideration of the words themselves.

In *Evans*, the Court explained that "[a]t common law, extortion was an offense committed by a public official who took 'by colour of his office' money that was not due to him*." Evans*, 504 U.S. at 260 (footnote omitted). The Court cited Blackstone, who defined extortion as "an abuse of public justice, which consists in an officer's unlawfully taking, *by colour of his office*, from any man, any money or thing of value, that is not due him, or more than is due, or before it is due." *Id.* n.4.

Our understanding of "under color of official right" liability, then, must begin with the notion that ordinarily

---

³ (...continued)
sheriff, but you are not." 89 Cong. Rec. H3228-29 (1943). We agree with the Eighth Circuit that this does not decide the issue before us, namely because the Representative's statement is completely at odds with the accepted interpretation of the term both before and after the Hobbs Act was enacted. *See United States v. French*, 628 F.2d 1069, 1073 n.4 (8th Cir. 1980) ("The brief debate that occurred . . . was not clear enough to be determinative of the scope of the 'color of official right' language, especially in light of the confusing reference to false pretenses type crimes, which would seem out of place in an extortion statute."). *See also McCormick v. United States*, 500 U.S. 257, 268 n.6 (1991).

the phrase applies to public officials who misuse their office. This is what we determined in *McClain* and is the view unanimously adopted across the circuits that have addressed the issue. *See United States v. Saadey*, 393 F.3d 669, 675 (6th Cir. 2005); *United States v. Boggi*, 74 F.3d 470, 476 (3d Cir. 1996); *United States v. Tomblin*, 46 F.3d 1369, 1382-83 (5th Cir. 1995); *United States v. Freeman*, 6 F.3d 586, 593 (9th Cir. 1993). We think the rationale that animates these decisions is the fact that extortion under color of official right, then and now, is a crime against the public trust. Victims of this type of extortion are vulnerable based on the authority that their victimizer wields. And what makes extortion under color of official right so pernicious is that the state (generally for good purposes; not evil) has given the offender the power to harm his victims. For this reason, such an offender is singled out for a special brand of criminal liability.

What then of someone who cloaks himself in the state's authority and uses it to intimidate and coerce his victims, as Abbas did here? Isn't such a criminal indistin-guishable in the eyes of the public (and thus his victim) from the official he claims to represent and, if so, shouldn't the law treat him the same? As a practical matter, for the men paying Abbas, it made no difference whether he was or was not an actual FBI agent. They just wanted their problems to go away. But, we should note that a foundational notion of our criminal code is that crimes that have identical effects can be punished differently, and appropriately so, based on the intent and manner of the crime. *See* Model Penal Code § 2.02 (General Re-quirements of Culpability). Criminal liability has never turned solely on the crime's effect on its victim.

Ultimately, the crime of extortion under color of official right, and its previous state and common law analogues, is appropriately considered an "ethics in government act." *See Lindgren, supra,* at 887-88. Early commentators listed extortion as a crime against public justice, not a crime against the person or property. *Id.* (referring specifically to Blackstone and Hawkins). Section 2C1.1 of the U.S. Sentencing Guidelines is similarly found under the part of the Guidelines (Part C) which deals with "Offenses Involving Public Officials and Violations of Federal Election Campaign Laws." Furthermore, § 2C1.1 itself applies to a number of crimes in addition to "extortion under color of official right" including "offering, giving, soliciting, or receiving a bribe; . . . fraud involving the deprivation of the intangible right to honest services of public officials; conspiracy to defraud by interference with governmental functions." This categorization of § 2C1.1 as punishing those involved in government dishonesty matches the roots of under color of official right liability. We see no reason to extend it for the first time to private citizens who masquerade as public officials.

And, importantly, no other court has either. The government can point to no other case where an impostor was successfully convicted or sentenced for extortion under color of official right. In fact, as the government concedes, the Sixth Circuit found otherwise in *Saadey*, 393 F.3d at 674-75. In *Saadey*, the defendant had been convicted of an attempted "under color of official right" violation of the Hobbs Act on the basis of an extensive scheme he had undertaken to "fix" cases as part of his employ in the Mahoning County Prosecutor's Office. Saadey continued this scheme after he left the office, and

the conviction for attempted extortion "under color of official right" was for money he tried to extort after he left the office.

The question the Sixth Circuit faced in *Saadey*, then, was whether the defendant could be liable under the Hobbs Act for pretending to be still in the employ of the prosecutor's office. If not, the court had to establish whether he could still be liable for aiding and abetting a public official in the act of extortion based on his relationship to those still working for the prosecutor. Contrary to the government's argument, in considering Saadey's potential as a masquerader, the Sixth Circuit stated, "[I]n this circuit, a private citizen who is not in the process of becoming a public official may be convicted of Hobbs Act extortion under the 'color of official right' theory only if that private citizen either conspires with, or aids and abets, a public official in the act of extortion." *Saadey*, 393 F.3d at 675. That statement was critical to the Sixth Circuit's ultimate decision to overturn Saadey's conviction on the attempted extortion charge—he was liable neither as a masquerader as a matter of law nor as an aider and abetter as a matter of fact.

The Sixth Circuit's analysis in *Saadey* is in accord with the reasoning of other circuits. *See Boggi*, 74 F.3d at 476 (finding § 2C1.1 inapplicable when defendant "was not a public official and he did not accept money in exchange for action involving any official duties"); *Tomblin*, 46 F.3d at 1382-83 (overturning "extortion under color of official right" conviction where defendant "was not a public official, nor was he in the process of becoming one"); *Freeman*, 6 F.3d at 593 ("We conclude that the Hobbs Act

reaches anyone who actually exercises official powers, regardless of whether those powers were conferred by election, appointment, or some other method.").

We think this is the correct approach and the one that matches the interpretation of the term "under color of official right" in our above discussion. Extortion under color of official right is a crime that punishes those who betray the public trust. But the term presumes that the "official" has actually been entrusted with authority by the public. Abbas's conduct assuredly damaged in some way the trust in the FBI of some members of Chicago's immigrant community, but this is not the correct inquiry. The question is whether he misused the cloak of official authority invested in him by the state. He had no such authority and therefore § 2C1.1 cannot be applied to him.

### III.  Harmless Error

We now reach the second issue in this case—whether the district court's sentencing error requires remand under the appellate review procedures outlined in *Gall v. United States*, 128 S. Ct. 586 (2007).

> Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to

consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

128 S. Ct. at 597. "Assuming that the district court's sentencing is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*

As we have detailed, the district court here improperly applied U.S.S.G. § 2C1.1 to Abbas's sentence and therefore miscalculated the Guidelines range, a mistake that is specifically listed as a significant procedural error in *Gall*. But what *Gall* does not tell us is whether such an error can be harmless. If such an error is harmless, then it would not require remand and we could proceed under the two-step process to assess its reasonableness. Abbas urges us to adopt the position that under the review procedures established in *Gall*, a district court's procedural error can never be harmless and therefore always requires remand.

But after *Gall*, we have found that sentencing errors were harmless in certain circumstances.[4] *See, e.g., United*

---

[4] One issue that militates against a finding of harmless error is the inability of the government to challenge, in a petition for certiorari, our determination that U.S.S.G. § 2C1.1 does not apply to impersonators. Given, however, that the government did not ask for a remand in the event we reached this

(continued...)

*States v. Quinlan*, No. 08-1388, 2008 WL 5395981, at *2 (7th Cir. Dec. 23, 2008) (not selected for publication) (finding harmless error in the event that the defendant was improperly denied credit for acceptance of responsibility); *United States v. Jackson*, 549 F.3d 1115, 1118 (7th Cir. 2008) (finding harmless error under a more lenient standard of review of a sentence for violation of supervised release); *United States v. White*, 519 F.3d 342, 349 (7th Cir. 2008) (finding harmless error despite district court's failure to exercise its discretion in considering the Guidelines' crack/powder disparity).

In *United States v. Anderson*, 517 F.3d 953, 965-66 (7th Cir. 2008), we upheld a defendant's sentence on appeal, despite the district court's miscalculation of the "benefit received" in return for a bribe, a calculation made pursuant to § 2C1.1. Because of recent amendments to the Guidelines, the proper sentencing calculation would have resulted in the same sentencing range on remand even under a correct calculation of the Guidelines. *Id.* at 966. And at sentencing, the trial judge had expressed his determination to impose the same sentence even if he had gotten the calculations wrong. *Id.* at 965. Therefore,

---

[4]  (...continued)

ruling, and instead argued forcefully for a finding of harmless error, we conclude the government will not be particularly prejudiced by an inability to challenge our holding. As noted above, the government offered no support for the notion that an impersonator has ever been successfully prosecuted for extortion under color of official right.

we were confident that the error did not affect the defendant's sentence, *id.,* and proceeded to reasonableness review.

It is important to emphasize that, as we noted in *Anderson*, our harmless error determination and review of the sentence's reasonableness are separate steps. *Id.* at 966 ("Because the district judge would apply the same sentence, we now ask only whether it is a reasonable one."). A finding of harmless error is only appropriate when the government has proved that the district court's sentencing error did not affect the defendant's substantial rights (here—liberty). To prove harmless error, the government must be able to show that the Guidelines error "did not affect the district court's selection of the sentence imposed." *Id.* at 965 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992) (applying harmless error pre-*Gall*)). This is not the same thing as proving that the sentence was reasonable.

"A judge must correctly understand what the Guidelines recommend." *United States v. Alldredge*, 551 F.3d 645, 647 (7th Cir. 2008). "After getting the Guidelines right, the district judge possesses discretion" to take the defendant's circumstances into account under 18 U.S.C. § 3553(a). *Id.* The recognition that some Guidelines miscalculations can be harmless does not change these basic principles. It merely removes the pointless step of returning to the district court when we are convinced that the sentence the judge imposes will be identical to the one we remanded. We are still bound to review that sentence for reasonableness. Because the Guidelines, while not

binding, are still "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594, we may "take the degree of variance into account and consider the extent of a deviation from the Guidelines," *id.* at 595. Therefore, on review it is crucial to understand just what the correct Guidelines sentence should be even if we are certain that the sentence imposed in the district court would have been the same absent the error. The correct sentence provides the launching point for our review under *Gall*'s substantive reasonableness prong.

Turning to Abbas, we note that our harmless error determination is simplified by the fact that the sentencing judge expressly stated that she would have imposed the same sentence even if § 2C1.1 did not apply to the defendant's sentence. The issue was clear—whether Abbas was subject to extortion under color of official right liability; the judge ruled that he was, but then indicated that, even if he was not, she would have exercised her discretion to apply the same enhancement based on the § 3553(a) factors. And she did so with a detailed explanation of the basis for the parallel result; this was not just a conclusory comment tossed in for good measure. The error was harmless.

But was the sentence reasonable? In other words, was the district judge's explanation sufficient to justify an upward departure from what is the appropriate guide-

line range of 15-21 months?[5] Variance from the Guideline "should be explained and supported with compelling justifications for such deviations." *United States v. Gordon*, 513 F.3d 659, 666 (7th Cir.), *cert. denied*, 129 S. Ct. 346 (2008). *See also United States v. Wachoviak*, 496 F.3d 744, 748-49 (7th Cir. 2007).

At sentencing, the trial judge found Abbas's crime "serious" because he assumed the guise of law enforcement and "impaired the reputation of law enforcement," and thus "threatened the public trust in that law enforcement, which threatens our whole law enforcement structure." Furthermore, as the judge put it, Abbas's false report to the FBI involved "explosive" allegations which diverted resources from the FBI's pursuit of bona fide terrorists. She further noted Abbas's history of fraud and his lack of remorse. She finally concluded that the § 3553(a) factors, particularly the need to promote respect for the law and the need to protect the public from Abbas, justified the sentence.

Where, as here, the judge has made a searching evaluation of a defendant's case, applied the statutorily man-

---

[5] We base our calculations on Abbas's suggestion here and at sentencing that the fraud guideline, § 2B1.1, is more applicable to his conduct. According to his calculations, which we adopt, his offense level (after appropriate enhancements) would have been 13, which combined with his criminal history level II would have resulted in a recommended range of 15 to 21 months, rather than the enhanced offense level of 16 which resulted in a recommended range of 24-30 months.

dated factors to the sentence and clearly articulated why the given defendant warrants a sentence that would be a departure from the correct range, the sentence is reasonable. Her searching and thorough analysis of the § 3553(a) factors provided a substantial justification for an upward departure from the correctly calculated range. The defendant's sentence is therefore AFFIRMED.