NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 8, 2014
Decided September 15, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-2971

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 10 CR 927 |
| ERIK SHAMSUD-DIN, *Defendant-Appellant*. | **Amy J. St. Eve**, *Judge.* |

**O R D E R**

Erik Shamsud-Din challenges the 180-month sentence he received after he transported girls, including at least one minor, in interstate commerce for the purpose of prostitution. We find no clear error in the imposition of a vulnerable victim enhancement because Shamsud-Din knowingly preyed on a victim's fear of a man who had been harming her. We also find any error in imposing a "use of a computer" enhancement based on Shamsud-Din's use of a cell phone to be harmless, as the district court made very clear

that it would have imposed the same sentence regardless of whether the enhancement was proper. We affirm Shamsud-Din's sentence.

## I. BACKGROUND

At the age of fifteen, Victim A ran away from a foster home in Minnesota and met a man whom the government calls "Individual A." He told Victim A he would be her boyfriend and would take care of her, and he bought her a bus ticket to California. But upon her arrival in California, Individual A required Victim A to work as a prostitute for him. With no money and no other options, Victim A did so and gave him all the money she made. Individual A beat her multiple times while she worked for him.

In December 2006, while at an appointment at a male customer's house, Victim A explained her circumstances to her customer, and he drove her to a hotel a few cities away. There, Victim A met Erik Shamsud-Din, the defendant. She told him that she had just escaped from a pimp who had been beating her up. She also told Shamsud-Din she was sixteen years old. After she explained her circumstances, Shamsud-Din offered that Victim A could begin working as a prostitute for him instead of for Individual A. Relieved because she thought Shamsud-Din could protect her from Individual A, Victim A gave Shamsud-Din the rest of the money she had with her and began working for him that evening.

Within a few days, Shamsud-Din began taking Victim A, along with Victims B and C, to various cities across the United States to engage in sex acts for money. When the group arrived in a new town, Shamsud-Din posted advertisements for the girls' sexual services on Craigslist and other websites. He communicated with Victim A by cell phone about travel to locations for purposes of prostitution. He drove her to appointments and communicated with her by cell phone to arrange where she should be dropped off and picked up. Victim A gave Shamsud-Din all the money she earned from prostitution and relied on him to buy her food and other necessities. Shamsud-Din, forty years old at the time, also had sex with Victim A two or three times a week during this time.

Shamsud-Din pled guilty to two counts of transporting Victim B in interstate commerce with the intent that she engage in prostitution, in violation of 18 U.S.C. § 2421. He stipulated in the plea agreement to the additional offense of knowingly transporting Victim A, a minor, across state lines to engage in prostitution, in violation of 18 U.S.C. § 2423(a). Victim A, twenty-three years old at the time of the sentencing hearing, testified at the sentencing hearing about her experiences with Shamsud-Din and the traumatic effects they had on her.

After hearing Victim A's testimony and considering the parties' arguments, the district court denied the government's request for an undue influence enhancement but applied vulnerable victim and use of a computer enhancements. The resulting advisory range under the United States Sentencing Guidelines was 135 to 168 months' imprisonment. The district court imposed a sentence of 180 months' imprisonment and explained that it would impose the same sentence even if the advisory guidelines were incorrectly calculated. Shamsud-Din appeals his sentence.

## II. ANALYSIS

### A.      Vulnerable Victim Enhancement

Shamsud-Din first contends that he should not have received a vulnerable victim enhancement. The United States Sentencing Guidelines provide for a two-level enhancement if the defendant knew or should have known that a victim of the offense was a vulnerable victim. U.S.S.G. § 3A1.1(b)(1). A "vulnerable victim" under the Guidelines is one who is a victim of the offense of conviction or any relevant conduct and "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) cmt. n.2. We review the district court's application of the vulnerable victim enhancement for clear error. *United States v. Christiansen*, 594 F.3d 571, 574 (7th Cir. 2010).

In concluding that the vulnerable victim enhancement was warranted, the district court stated:

> The victim here clearly conveyed to the defendant the fact that she did not have a stable place to live; that she did not have a lot of money left; that she was a runaway; and, in addition, in making it significant here, is the fact that she conveyed to the defendant—and this had nothing to do with her age, nor did the other factors, that she conveyed to the defendant—that she was afraid of the prior relationship she had; and, that Individual A was preying on her and had beaten her up and she feared him. And the defendant offered his "protection" to her and he took advantage of that.

Shamsud-Din makes several arguments as to why, in his view, the vulnerable victim enhancement was wrongly applied. For one, he contends that Victim A's runaway status was too closely related to her age to support the enhancement. The vulnerable victim enhancement is not appropriate if the factor that makes the person vulnerable is already

incorporated in the offense guideline. U.S.S.G. § 3A1.1(b)(1) cmt. n.2. Shamsud-Din's offense level had been calculated based upon a guideline that was limited to crimes against minors. *See* U.S.S.G. § 2G1.3(a)(3). Here, however, the district court specifically stated that it found Victim A vulnerable for reasons that had nothing to do with her age. Those reasons included that she was fearful of Individual A and that Shamsud-Din preyed upon that fear, as well as that she was homeless and had little money. Because these reasons were unrelated to Victim A's age, the fact that she was a runaway does not preclude the enhancement in this case.

Shamsud-Din also argues that Victim A's homelessness, runaway status, and economic uncertainty cannot form the basis of a vulnerable victim finding because these factors are "typical" of sex-trafficking victims and are therefore insufficient to show that Victim A was "unusually" vulnerable. *See* U.S.S.G. § 3A1.1(b)(1) cmt. n.2 (defining "vulnerable victim" as one who is "*unusually* vulnerable due to age, physical or mental condition, or who is otherwise *particularly susceptible* to the criminal conduct") (emphases added). Even if that were true, a "significant" reason the district court found Victim A vulnerable was that she feared Individual A, a man who had physically and mentally abused her, and that Shamsud-Din knowingly took advantage of that fear. That fear, and Shamsud-Din's decision to prey on it, means it was not error for the district court to conclude that Victim A was unusually vulnerable or particularly susceptible.

Shamsud-Din also briefly challenges the district court's finding that Victim A feared Individual A. This is a challenge to a factual finding, so we review it for clear error. *See United States v. Rumsavich*, 313 F.3d 407, 411 (7th Cir. 2002). Victim A testified at the sentencing hearing that Individual A had beaten her up, that she was afraid of him, and that she hoped Shamsud-Din could protect her from Individual A. The district court was well within its discretion to credit her testimony and to believe that Victim A feared Individual A. We find no error in the decision to impose the vulnerable victim enhancement.

**B.      Enhancement for Use of Computer to Facilitate Travel of Minor to Engage in Prohibited Sexual Conduct**

Shamsud-Din also challenges the two-level enhancement he received for using a computer to facilitate the travel of a minor to engage in prohibited sexual conduct. The guideline at issue, U.S.S.G. § 2G1.3(b)(3), provides:

> If the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor, increase by 2 levels.

The district court imposed this enhancement "given the use of the cell phone to facilitate the travel of and to facilitate the minor engaging in prohibited sexual conduct."

We note first that the government does not seek the "use of a computer" enhancement on the basis of Shamsud-Din's placement of advertisements on Craigslist and other internet websites for Victim A's sexual services. That is likely because the application notes to U.S.S.G. § 2G1.3 state that subsection (b)(3), the subsection at issue, "is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor." U.S.S.G. § 2G1.3(b)(3) cmt. n.4.

Instead, the government sought and received the enhancement on the basis that Shamsud-Din's use of a cell phone to facilitate Victim A's travel arrangements constituted the "use of a computer" under U.S.S.G. § 2G1.3(b)(3). Shamsud-Din does not dispute that he used a cell phone to facilitate the travel of a minor to engage in prohibited sexual conduct. But he maintains a cell phone is not a "computer." That argument certainly has intuitive appeal. The mere use of a cell phone to make and receive calls, especially if that cell phone does not have internet capability (and it is unclear from the record whether the phone at issue here could access the internet), would not seem to fall within most persons' understanding of the "use of a computer." Nonetheless, U.S.S.G. § 2G1.3 directs that "computer" for purposes of the enhancement has the meaning given the term in 18 U.S.C. § 1030(e)(1). *See* U.S.S.G. § 2G1.3 cmt. n.1. That statute gives "computer" what the district court rightfully called a "very, very broad" definition:

> [T]he term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility directly related to or operating in conjunction with such a device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

18 U.S.C. § 1030(e)(1). We have said in another context that this very, very broad definition could encompass a cell phone. *See United States v. Mitra*, 405 F.3d 492, 495 (7th Cir. 2005). The Eighth Circuit, while acknowledging that "a 'basic' cellular phone might not easily fit within the colloquial definition of 'computer'" ruled after considering evidence about a defendant's cell phone that it was a "computer" for purposes of U.S.S.G. § 2G1.3(b)(3) in light of the definition set forth in 18 U.S.C. § 1030(e)(1). *United States v. Kramer*, 631 F.3d 900, 903-04 (8th Cir. 2011).

We, however, need not resolve whether the enhancement for use of a computer was warranted. Procedural errors in computing sentencing guidelines are subject to harmless error review. *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009). "A finding of harmless error is only appropriate when the government has proved that the district court's sentencing error did not affect the defendant's substantial rights (here-liberty)." *Id.* We do not lightly find harmless error regarding a guidelines calculation. We will only find harmless error if the government demonstrates that any error in calculating the advisory guidelines range "'did not affect the district court's selection of the sentence imposed.'" *Id.* (citation omitted).

It is clear in this case that the district court would have imposed the same sentence even if the use of a computer enhancement was improper. After detailing the reasons for the sentence chosen, the district court explicitly noted that there had been disagreements regarding the guideline calculations and stated that even if the guidelines had been calculated incorrectly, the sentence would not change in light of all the 28 U.S.C. § 3553(a) factors. As in *Abbas*, the district court judge gave "a detailed explanation of the basis for the parallel result; this was not just a conclusory statement tossed in for good measure." *Id*. The district court's explanation of its sentence was thorough. The judge called the offense "a very serious, very significant offense" as Shamsud-Din had exploited minor girls and profited from them. The district court also pointed to Shamsud-Din's history and characteristics, in particular that he was a repeat sex offender against minors and was dangerous to the community because of that. The court further noted that Shamsud-Din had received a significant sentence for similar activity that had not deterred him. The court also considered that Shamsud-Din had been defiant in court on multiple occasions, yelling, and showed disrespect for the process and for any kind of authority. We conclude that any error in the imposition of the enhancement would not have affected the district court's selection of sentence, so it was harmless.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.