WILLIAMS, Circuit Judge.
Rex Black répeatedly tried to pay .off a more than $5 million tax debt with checks *572 drawn on checking accounts that he knew were closed to prevent the Internal Revenue Service (“IRS”) from collecting taxes from him. A jury convicted Black of one count of obstructing and impeding the IRS from collecting taxes and four counts of passing and presenting fictitious financial instruments with intent to defraud. The district court sentenced Black to 71 months in prison. Black now appeals arguing that the district court erred in determining his sentencing range under the United States Sentencing Guidelines (“U.S.S.G.”) § 2T1.1, improperly calculating the tax loss by aggregating the face value of the fraudulent checks and by including penalties and interest in the calculation. We agree, the district court misinterpreted and misapplied the tax loss definition to the facts of this case. Finally, we conclude, contrary to Black’s assertions, that the district court did not err by failing to consider audit errors and apply available deductions because Black could not establish that he was entitled to any reduction in taxes owed. Therefore, we vacate Black’s sentence and remand for resentencing.
I. BACKGROUND
In 2000, the IRS conducted an audit of Black’s income for tax years 1997 and 1998 (the “2000 Audit”). After the IRS completed the audit, it assessed approximately $3.89 million in taxes, penalties and interest (approximately $2.2 million in taxes alone). Black did not pay the amount due, and additional penalties and interest accrued.
Beginning in October 2002, the IRS filed a series of liens on various properties owned by Black to secure payment of Black’s tax debt. In response to each lien, Black submitted to the IRS a fraudulent check or registered bill of exchange[1] to extinguish the lien and satisfy his tax debt. For example, in October 2002, the IRS filed the first lien to satisfy the tax debt in the amount of $4,856,895.49. That same month, Black submitted a check drawn on a closed account in the full amount to the IRS. This pattern continued.
Between November 2002 and August 2003, the IRS filed liens for $1,467,168.33, $1,417,804.18, and $4,954,049.40, and Black sent the IRS a fraudulent check or bill of exchange in the lien amount. At some point, the IRS assessed $505,993.68 for additional penalties and interest, and Black sent the IRS a bad check for that amount too.
The government charged Black with one count under 26 U.S.C. § 7212(a) for corruptly obstructing and impeding the IRS in its collection of taxes, penalties, and interest (Count 1) and three counts under 18 U.S.C. § 514(a)(3) for passing or presenting the United States with fictitious instruments appearing to be financial instruments with the intent to defraud (Counts 2, 4-5). Count 3 is not relevant to the appeal. The jury found Black guilty of all counts.
Before Black’s sentencing hearing, the district court issued an order resolving issues related to Black’s sentencing guideline range. First, it grouped Counts 1, 2, 4, and 5 for guideline purposes (collectively, the “group 1 offenses”). Next, it determined that the applicable guideline provision was U.S.S.G. § 2T1.1 and found that the offense level under this guideline “is determined on the basis of Black’s intended amount of monetary loss to the IRS that was the object of Black’s criminal conduct.” The district court also found that the guidelines required him to aggre *573 gate the value of the fraudulent documents, so it added the face value of'each check and bill of exchange Black submitted to the IRS. From this calculation, the district court determined that the tax loss was over $14 million. It recognized that this amount included the taxes, penalties, and interest Black owed. Using the U.S.S.G. § 2T4.1 tax loss table that applies to § 2T1.1, the district court determined that the tax loss applicable to Black’s criminal conduct was more than $7 million but less than $20 million, resulting in a base offense level of 26. Because Black was also convicted of Count 3, the guidelines required the district court to increase the offense level by one point. The resulting base offense level was 27, which provides for a sentencing range of 70 to 87 months. At the sentencing hearing, the district court considered the advisory guidelines range along with the factors set forth in 18 U.S.C. § 3553 and sentenced Black to 71 months imprisonment.
II. ANALYSIS
On appeal, Black attacks the district court’s application of U.S.S.G. § 2T1.1. Specifically, he argues that the district court made three errors in calculating the amount of tax loss under U.S.S.G. § 2T1.1: (1) aggregating the face value of the checks and bills of exchange; (2) including penalties and interest; and (3) failing to correct audit errors and apply available deductions. He concludes that these errors resulted in an incorrect base offense level.
When reviewing a sentence, we must first check to see if the district court committed a significant procedural error, such as improperly calculating the guidelines range, treating the guidelines as mandatory, or selecting a sentence based on clearly erroneous facts. United States v. Abbas, 560 F.3d 660, 666 (7th Cir.2009) (quoting Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). If we determine that no procedural errors occurred, we consider whether the sentence is substantively reasonable. United States v. Garcia, 754 F.3d 460, 483 (7th Cir.2014).
We review the sentencing court’s legal interpretation and application of the sentencing guidelines de novo. United States v. Jackson, 410 F.3d 939, 941 (7th Cir.2005). We review the district court’s tax loss calculation for clear error. United States v. Williams-Ogletree, 752 F.3d 658, 662 (7th Cir.2014). “To show clear error a defendant ‘must show that the district court’s calculation was not only inaccurate but outside the realm of permissible computations.’ ” Id. (quoting United States v. Al-Shahin, 474 F.3d 941, 950 (7th Cir.2007)).
A. Definition and Application of Tax Loss
First, Black argues that the district court improperly calculated the tax loss amount by aggregating the amount of each fraudulent check and bill of exchange that he attempted to pass. The government argues that the guidelines required the district court to aggregate the tax loss amount. We agree with Black that the district court did not properly calculate the tax loss amount. However, the error arose in the first instance from the district court’s interpretation and misapplication of the tax loss definition to the facts of this case not from any aggregation principle.
The district court determined that the tax loss amount was more than $7 million but less than $20 million, based on an intended loss amount of over $14 million, which is the cumulative amount of each fraudulent check and bill of exchange Black attempted to pass. This tax loss *574 figure resulted in a base offense level of 26. To arrive at this figure, the district court determined that 2Tl.l(c)(l) provided the applicable definition of tax loss. This guideline states:
If the offense involved tax evasion or a fraudulent or false return, statement or other document, the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully complete).
U.S.S.G. § 2T1.1(c)(1) (2013). But using this tax loss definition, the district court’s calculation was incorrect.
In this circuit, “[w]e take the phrase ‘the object of the offense’ to mean that the attempted or intended loss, rather than the actual loss to the government, is the proper basis of the tax-loss figure.” United States v. Chavin, 316 F.3d 666, 677 (7th Cir.2002).- Here, the object of Black’s offense was the amount of money that he attempted to avoid paying, which is the actual amount of taxes, penalties and interest that was due. Black owed the IRS unpaid taxes for 1997 and 1998 plus penalties and interest. The IRS filed a lien to satisfy the tax debt in the amount of $4,856,895.49. Black wrote a bad check in this amount. The IRS notified Black that he owed an additional $505,993.68 in penalties and interest, and Black wrote a bad check for this amount. At that point, Black owed the IRS $5,362(889.17. Diligent in its collection efforts, the IRS filed three additional liens for $1,467,168.33, $1,417,804.18, and $4,954,049.40 — all to collect the same $5.3 million Black owed. Black responded by writing two bad checks and two fraudulent bills of exchange to satisfy the tax liens. The district court added the face value of each fraudulent instrument submitted to the IRS to determine the tax loss was over $14 million. Doing so was improper under § 2T1.1. From the record, it appears that the tax loss was only approximately $5.3 million.
Section 2T1.1 defines tax loss in various ways, as detailed below.
For the purposes of this guideline—
(1) If the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed).

Notes:

(A) If the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income (34% if the taxpayer is a corporation) plus 100% of any false credits claimed against tax, unless a more accurate determination of the tax loss can be made.
(B) If the offense involved improperly claiming a deduction or an exemption, the. tax loss shall be treated as equal to 28% of the amount of the improperly claimed deduction or exemption (34% if the taxpayer is a corporation) plus 100% of any false credits claimed against tax, unless a more accurate determination of the tax loss can be made.
(2) If the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed and did not pay.

Notes:

(A) If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income (25% if the taxpayer is a corporation) less any tax withheld or otherwise paid, unless a more accurate *575 determination of the tax loss can be made.
(3) If the offense involved willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay.
(4) If the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled.
U.S.S.G. § 2T1.1. When reading § 2Tl.l’s definitions of tax loss as a whole, we understand each definition of tax loss to reflect the tax revenue that the government was owed but did not receive due to a defendant’s criminal conduct. See § 2Tl.l(e)(l)-(4); accord United States v. Gordon, 291 F.3d 181, 187 (2d Cir.2002) (“Tax loss under § 2T1.1 is intended to reflect the revenue loss to the government from defendant’s behavior.”).
The district court could have determined § 2B1.1, the general fraud guideline, applied to Black’s convictions. Section 2B1.1 deals with “loss,” which we will refer to as “general loss,” not “tax loss.” This section defines general loss in the following ways.
(i) Actual Loss. — “Actual loss” means the reasonably foreseeable pecuniary harm that resulted from the offense.
(ii) Intended Loss. — “Intended loss” (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).
U.S.S.G. § 2B1.1 cmt. n. 3(A). Unlike the tax fraud guideline, § 2T1.1, the general fraud guideline, § 2B1.1, defines “intended loss” to include monetary “harm that would have been impossible or unlikely to occur {e.g. ... an insurance fraud in which the claim exceeded the insured value).” U.S.S.G. § 2B1.1 cmt. n. 3(A)(ii).
Three of Black’s relevant convictions were under 18 U.S.C. § 514 for presenting the U.S. government with a check or a bill of exchange with intent to defraud, and the guidelines state that § 2B1.1 is applicable to convictions under 18 U.S.C. § 514. Under § 2B1.1, in a typical case involving passing fraudulent checks, district courts routinely calculate a general loss amount by adding the value of each check. Here, however, the district court did not choose to proceed under § 2B1.1, which changed the parameters of its tax loss calculation.
All parties agreed that § 2T1.1 was the appropriate guideline in this case. (No party challenged the propriety of using this guideline on appeal.) As a result, the district court proceeded under § 2T1.1. This guideline required the district court to calculate loss by the tax loss the IRS incurred or could have incurred, not the general loss, which the general fraud guideline defines as monetary harm that did result or could have resulted from attempts to pass bad checks. Compare U.S.S.G. § 2Tl.l(c)(l) (defining tax loss in various ways corresponding to the amount of tax revenue the IRS was owed and did not receive) with § 2B1.1 cmt. n. 3 (defining loss as the reasonably foreseeable pecuniary harm that resulted from the offense or “the pecuniary harm that was intended to result from the offense,” even if such harm would have been impossible or unlikely to occur). By reviewing the face value of the checks and aggregating these amounts, the district court considered the general loss — the monetary harm that the IRS could have faced — not the tax loss. As stated above, tax loss reflects the tax revenue that the government was owed but did not receive due to a defendant’s criminal conduct. Therefore, under these *576 facts, the tax loss cannot exceed the $5.3 million that the evidence shows Black owed the IRS.
B. Penalties and Interest Should Not Have Been Included in the Tax Loss Calculation.
Black argues that the district court erred by including penalties and interest as part of the tax loss calculation. We agree.
The general rule is that the tax loss calculation “does not include interest or penalties.” U.S.S.G. § 2T1.1 cmt. n. 1. There is a narrow exception to this general rule for willful evasion cases under 26 U.S.C. § 7201 and willful failure to pay cases under 26 U.S.C. § 7203. Id. Black’s case does not fall within this exception. The jury did not convict him of any offense under § 7201 or § 7203.
The government argues that the issue of whether Black’s tax loss calculation included penalties and interest is not properly before the court because the district court based the tax loss amount on the face value of the fraudulent checks, not the amount of taxes Black owed. As stated above, the face value of the checks was not the correct tax loss. Moreover, the record establishes that the district court included penalties and interest in its tax loss calculation.
The district court stated “[t]he loss Black intended the IRS to suffer had Black’s offense been successfully completed included the loss of the penalties and interest Black owed the IRS, as well as the taxes he owed.” It included a footnote in its order that stated that:
Even though Black’s criminal statute of conviction was 26 U.S.C. § 7212(a) not [§§ ] 7201 or 7203, the evidence at trial established beyond a reasonable doubt that the object of Black’s criminal conduct in committing the offenses ... was to defraud the IRS by willfully failing to pay and willfully evading his payment of his debt obligations to the IRS, which included the penalties and interest, as well as the taxes that Black owed to the IRS.
The district court included penalties and interest' in the tax loss calculation and did so because Black’s conduct was similar to conduct criminalized by § 7201 and § 7203. However, since the statute of conviction was not § 7201 or § 7203, the plain language of the guideline commentary compels a finding that the district court erred by including penalties and interest in the tax loss amount.
C. Black Failed to Meet His Burden to Establish He Was Entitled to a Tax Loss Reduction Due to Audit Errors and Available Deductions.
Black also argues that the tax loss calculation was erroneous because it was derived from the 2000 Audit which contained an overstatement of Black’s income and failed to credit Black for legitimate deductions. He further argues that it was the government’s burden to prove the loss amount.
The district court determined that Black failed to follow the appropriate procedures to appeal the IRS’s audit determination and thus waived his right to assert unclaimed deductions, relying on Ghavin, 316 F.3d at 677-78. It also determined that: (1) the deductions were unrelated to the tax offenses of which the jury found Black guilty, and (2) Black’s failure to cooperate with the IRS during the audit process made it so that the accuracy of the deductions was not reasonably ascertainable at the time of Black’s sentencing.
In Chavin, we held that district courts should not consider unclaimed, legitimate deductions when calculating tax loss under *577 § 2T1.1. 316 F.3d at 677-79. The U.S. Sentencing Commission disagreed and issued an amendment to § 2T1.1 to “reflect the Commission’s view that consideration of legitimate unclaimed credits, deductions, or objections, subject to certain limitations and exclusions,” is proper. U.S.S.G. Manual app. C, amend. 774 at 41-42. The amendment states:
[T]he court should account for any unclaimed credit, deduction, or exemption that is needed to ensure a reasonable estimate of tax loss, but only to the extent that (A) the credit, deduction, or exemption was related to the tax offense and could have been claimed at the time the tax offense was committed; (B) the credit, deduction, or exemption is reasonably and practicably ascertainable; and (C) the defendant presents information to support the credit, deduction, or exemption sufficiently in advance of sentence to provide an adequate opportunity to evaluate whether it has sufficient indicia of reliability to support its probable accuracy.
The burden is on the defendant to establish any such credit, deduction, or exemption by the preponderance of the evidence.
Id. at § 2T1.1 cmt. n. 3. As a result, Chavin no longer controls the issue of whether the district court should consider unclaimed deductions. If the circumstances of the case meet the criteria outlined above, district courts should consider unclaimed deductions.
Here, the district court correctly determined that it should not have considered unclaimed deductions and other alleged errors in the 2000 Audit. Once the government established the tax loss amount, Black had the burden to show that he was entitled to credits or deductions. Id. There is insufficient evidence on the record to establish that at the time of Black’s criminal conduct, he could have challenged the audit and reduced his tax liability. Therefore, Black did not meet his burden. So, there was no error by the district court with respect to this issue.
In sum, the district court misapplied § 2T1.1 to Black’s sentence. Specifically, it erred by finding that the tax loss was more than $7 million but less than $20 million, when the tax loss, before any deductions for penalties and interest, was approximately $5.3 million. Because of the district court’s errors in calculating the tax loss, it selected the wrong base offense level and improperly calculated the sentencing range.
D. Harmless Error Analysis
An error in calculating the sentencing guideline range is a procedural error that requires remand unless the government can show that the error is harmless. United States v. Thompson, 599 F.3d 595, 602 (7th Cir.2010). To establish harmless error, the government must be able to show that the sentence would have been the same absent the error. Abbas, 560 F.3d at 667. At oral argument the government acknowledged that the district court’s decision was driven by the guideline calculation. A review of the record reveals the same. As a result, the government cannot show that the sentence would have been the same absent the error, and the miscalculation of the tax loss amount is not harmless error. Therefore, we must remand for reconsideration of the tax loss amount.
Black also argues that his sentence was substantively unreasonable. Because we remand for resentencing, we need not address this argument. See United States v. Holliday, 672 F.3d 462, 475 (7th Cir.2012).
*578 III. CONCLUSION
For the reasons stated, we Vacate Black’s sentence and Remand for full re-sentencing aftér correcting the tax loss in the guideline calculation using U.S.S.G. § 2T1.1.

. The fraudulent bills of exchange in this case are financial instruments that appear to draw on an account at the U.S. Department of Treasury in Black’s name.