In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2247

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

UZORMA C. IHEDIWA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:20-CR-00116 — **J. P. Stadtmueller**, *Judge.*

ARGUED APRIL 4, 2023 — DECIDED MAY 4, 2023

Before EASTERBROOK, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* After a local high school student died from a fentanyl overdose, the police in Kenosha, Wisconsin, opened an investigation to track down the source of the fatal drugs. That investigation led them to Uzorma Ihediwa, who had sold Percocet pills to the student's neighbor. Police soon discovered that Ihediwa's pills were not authentic Percocet;

they were counterfeits that contained a mixture of drugs, including fentanyl.

Ihediwa pleaded guilty to one count of distributing fentanyl in violation of 21 U.S.C. § 841(a)(1). The only contested issue at sentencing was whether Ihediwa knew that the pills contained fentanyl. If so, then his offense level under the U.S. Sentencing Guidelines would go up four notches. See U.S.S.G. § 2D1.1(b)(13). Ihediwa insists that he had no idea that the pills were counterfeit, much less that they contained fentanyl. The government, on the other hand, argues that Ihediwa knew that the pills were fentanyl-laced knock-offs. The district court sided with the government. Ihediwa has now appealed, complaining only about his sentence. Because the district court emphasized that its ultimate sentencing decision was not affected by the Guidelines dispute, any error in its interpretation of the Guidelines was harmless. We therefore affirm.

**I**

Fentanyl is a highly potent drug, and so when the high school student died of an overdose, the police lost no time in attempting to track down the source. They learned that the student's neighbor, Edward Shingara, had given her the pills that caused her death. Shingara told police that Ihediwa was his supplier of "Percocet" pills. Another neighbor, Anthony Martin, informed police that he too had purchased "Percocet" pills from Ihediwa. For the next step in the investigation, the police conducted several controlled purchases of pills from Ihediwa. They found over 2,000 pills at his residence. But the recovered pills were not authentic Percocet; they tested positive for a mixture of drugs, including fentanyl.

Ihediwa pleaded guilty to one count of distribution of fentanyl, but he challenged the government's recommendation that the district court apply a four-level enhancement under U.S.S.G. § 2D1.1(b)(13). That enhancement applies "[i]f the defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl." Ihediwa urged that he did not manufacture the pills himself, did not know that they were counterfeit, and did not know that they contained fentanyl.

The government had no smoking-gun proof that Ihediwa knew the pills contained fentanyl. It relied instead on circumstantial evidence. First, the government argued that Ihediwa must have known that the pills were fake because they were brittle, chalky, and easily breakable. It also asserted that Ihediwa was selling the pills for significantly less than the estimated street value of authentic Percocet. But even if these facts demonstrate knowledge that the pills were *not* real Percocet, they fall short of showing that the pills contained fentanyl, as opposed to other substances, let alone that Ihediwa knew their exact composition.

To fill in that last blank, the government relied heavily on three text messages Ihediwa received from Bobby Felicelli, who the government claimed was Ihediwa's longtime friend and customer. In the texts, Felicelli said that he had sold someone 15 pills, and that the buyer had overdosed because the pills were not authentic Percocet; instead, they were "straight" fentanyl. He then asked Ihediwa to call him. The government argued that Felicelli bought the pills at issue from Ihediwa, and therefore Ihediwa knew (at least after receiving the texts) that the pills contained fentanyl. The government also pointed to a recorded phone call between

Ihediwa and Martin, in which they discussed the high school student's then-recent death. Ihediwa said that he "saw that shit in the paper" and "ain't trippin' about it." But Ihediwa and Martin did not mention fentanyl in the conversation, and the news that the student had overdosed on fentanyl specifically was not yet public. The government nevertheless argued that Ihediwa's response reveals that he was aware of the dangerousness of his pills. Even if this is a reasonable inference, however, fentanyl is not the only substance that can make pills dangerous.

The district court held that the enhancement applied. It first explained that the word "knowingly" in the Guideline could include deliberately avoiding knowledge of an inculpatory fact. "[W]hat's driving this case along," the court explained, "[is] what is expected in terms of a reasonable person confronted under similar circumstances with this whole notion of knowingly … . [W]e can't go forward with what might reasonably be described as the ostrich with the head in the sand approach." The court then found that there were "multiple red flags" and "an abundance of notice and from multiple vantage points" that would have put a reasonable person "on notice that not all was well." The court then jumped to the conclusion that Ihediwa was deliberately avoiding awareness of the fentanyl and that this behavior satisfied the knowledge requirement of the enhancement.

The enhancement increased Ihediwa's Guidelines-recommended range from 51–63 months to 78–97 months. But the court ultimately sentenced Ihediwa to 40 months' imprisonment—a surprisingly low sentence that was below even the one the Guidelines would have recommended without the disputed enhancement. Ihediwa appeals, arguing that the

district court committed procedural error by misstating and then misapplying the legal standard for knowledge.

**II**

To determine whether a Guidelines enhancement was correctly imposed, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Major*, 33 F.4th 370, 378 (7th Cir. 2022).

The Guidelines do not specifically define "knowledge" or "knowingly," and so we assume that these terms have their "usual meaning." *United States v. Bader*, 956 F.2d 708, 710 (7th Cir. 1992). "For purposes of criminal liability, deliberately avoiding knowledge of a criminal activity is the same thing as having actual knowledge of that activity." *United States v. Carrillo*, 435 F.3d 767, 780 (7th Cir. 2006). This standard is a demanding one; negligence or recklessness will not suffice. *United States v. Tantchev*, 916 F.3d 645, 653 (7th Cir. 2019).

The district court made numerous references to "a reasonable person" and "notice" throughout its analysis of whether the enhancement applied to Ihediwa. This raises the question whether the court appreciated the critical distinction between deliberate avoidance and mere recklessness or negligence. But we need not decide whether the court correctly held that Ihediwa had actual or constructive knowledge that his pills contained fentanyl. The court made clear that the contested enhancement did not factor into its ultimate sentencing decision. Therefore, any error was harmless.

"[W]e have often encouraged district judges facing a tricky guideline issue to ask themselves whether the answer actually makes a difference to them." *United States v. White*, 883 F.3d 983, 987 (7th Cir. 2018). This does not mean that a

district court can inoculate every Guidelines miscalculation with a boilerplate disclaimer that its final decision would be the same regardless of any error. But when the district court credibly and thoroughly "explains that a disputed guidelines issue ultimately did not matter for the exercise of sentencing discretion under [18 U.S.C.] § 3553(a), we will treat an arguable error in the guideline calculation as harmless." *Id.*; accord *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009) (holding that a Guidelines error was harmless because the district court provided "a detailed explanation of the basis for the [chosen sentence]" as opposed to "just a conclusory comment tossed in for good measure").

Here, the district court said several times that "the record should be crystal clear that the sentence imposed by the Court would be the same irrespective of whether either guidelines construct applied, and that is underscored by the serious nature of the conduct here." This was not a rote disclaimer. The court provided an adequate explanation of why its sentencing decision was unaffected by the disputed "knowledge" enhancement. Throughout the sentencing hearing, the court made clear that it disapproved of Ihediwa's reckless conduct, regardless of whether his actions met the demanding "deliberate avoidance" standard needed to constitute knowledge. In its view,

> Mr. Ihediwa was on very, very, very troubled waters with his continued distribution of this substance marketed as Percocet because there are multiple red flags here … . [T]here's appropriate notice, and there's an abundance of notice from multiple vantage points, whether it's the structure of the substance, whether it's the

> price, whether it's fragility of the pills, et cetera, et cetera. … Whether [the text messages] are true or fiction, they put [Ihediwa] on notice that all was not well. That's what this is all about.

In short, the court determined that the "salient fact" was that Ihediwa was "on notice" about the dangerousness of the pills and nevertheless continued to distribute them. The court also explained that it gave weight to the mitigating factors presented by the defense, including Ihediwa's academic achievements during the pendency of the case.

These considerations were entirely appropriate. See 18 U.S.C. § 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant"); § 3553(a)(2)(A) ("the need for the sentence imposed … to reflect the seriousness of the offense"). Although the Guidelines enhancement at issue required the district court to thread the needle between recklessness and knowledge, the court was within its authority to decline to attach punitive significance to that distinction. Courts are "entitled to adopt their own sentencing philosophy based in the considerations of section 3553(a), and so they are not compelled to accept the advice that the guidelines offer." *United States v. Bravo*, 26 F.4th 387, 396 (7th Cir. 2022).

The fact that the district court's choice of sentence was not affected by the Guidelines dispute is further supported by the sentence itself: only 40 months' imprisonment. This sentence was well below the Guidelines-recommended range, whether with the enhancement (78–97 months) or without it (51–63 months).

Because the district court selected a sentence for Ihediwa based on reasons independent of the disputed enhancement, and it supported its choice using the section 3553(a) factors, any error in its application of U.S.S.G. § 2D1.1(b)(13) was harmless.

## III

Because the alleged procedural error was harmless and Ihediwa does not challenge the substantive reasonableness of his sentence, we AFFIRM the judgment of the district court.